[Crim. No. 19923. First Dist., Div. Four. Aug. 7, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD MICHAEL GEORGE et al., Defendants and Appellants.

COUNSEL

Mark H. Ross, under appointment by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and William D. Stein, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

CALDECOTT, P. J.—Richard M. George and George M. Martinez were each convicted, following a jury trial, of violation of Penal Code section 4530, subdivision (b) (escape from state prison). The appeal is from the judgments.

During March 1979, appellants were inmates of the California Department of Corrections Black Mountain Conservation Camp, a minimum security institution without fenced perimeter, located in Sonoma County. When each appellant arrived at camp he received an orientation by a prison officer about the camp limits and then signed a form acknowledging the orientation.

On March 3, 1979, at 1:30 a.m., it was discovered that appellants were missing from camp. The police were notified of the escape and appellants were captured on March 4.

The basis of appellants' defense was that they had liquor hidden outside the camp and had left camp to get a drink. They claim that after drinking they intended to return to camp before they were missed.

I

In the original information appellants were charged both with escape and attempted escape from the prison farm.[1] In order to conform to the proof, the prosecution, following the conclusion of its case in chief, moved to amend the information by striking the charge of attempted escape. The trial court granted the motion and simultaneously therewith ruled that evidence as to appellants' motivation for leaving the prison camp and their intent to return to their confinement after the "booze run" was irrelevant and therefore inadmissible. Appellants contend on appeal that the aforestated ruling of the trial court along with its subsequent denial of appellants' motions for a mistrial, continuance and a new trial, constituted prejudicial error because (a) the amendment of the information radically reconstituted the charge against them and, (b) the exclusion of evidence prevented the introduction of a strong defense as to the charge of attempted escape. Appellants' arguments are totally without merit.

■ Turning to the first issue, it is well settled that Penal Code section 1009 authorizes amendment of an information at any state of the proceedings provided the amendment does not change the offense charged in the original information to one not shown by the evidence taken at the preliminary examination. If the substantial rights of the defendant would be prejudiced by the amendment, a reasonable postponement not longer than the ends of justice require may be granted. (*People* v. *Graham* (1974) 38 Cal.App.3d 251, 255 [112 Cal.Rptr. 915]; *People* v. *Gonzalez* (1972) 28 Cal.App.3d 1091, 1095 [104 Cal.Rptr. 530], disapproved on other grounds in *People* v. *Schueren* (1973) 10 Cal.3d 553, 558, fn. 6 [111 Cal.Rptr. 129, 516 P.2d 833]; *People* v. *Spencer* (1972) 22 Cal.App.3d 786, 799 [99 Cal.Rptr. 681].) ■ However, as the case law emphasizes, the questions of whether the prosecution should be permitted to amend the information and whether continuance in a concrete case should be granted are mat-

---

[1]The specific charging language read as follows: "The said defendants did violate Section 4530(b) of the Penal Code, in that they did wilfully, unlawfully and feloniously escape and attempt to escape from Black Mountain Conservation Camp, a prison farm belonging to the California Department of Corrections."

ters within the sound discretion of the trial court and its ruling will not be disturbed on appeal in the absence of showing a clear abuse of discretion. (*People* v. *Murphy* (1973) 35 Cal.App.3d 905, 920 [111 Cal.Rptr. 295]; *People* v. *Bethea* (1971) 18 Cal.App.3d 930, 937 [96 Cal.Rptr. 229]; *People* v. *Baldwin* (1961) 191 Cal.App.2d 83, 87 [12 Cal.Rptr. 365]; *People* v. *Stoddard* (1948) 85 Cal.App.2d 130, 138-139 [192 P.2d 472].) ■ In accordance with these principles, it has been held to be a correct exercise of discretion to allow an amendment of an information to properly state the offense at the conclusion of the trial. (*People* v. *Flowers* (1971) 14 Cal.App.3d 1017, 1019-1020 [92 Cal. Rptr. 647]; *People* v. *Roth* (1934) 137 Cal.App. 592, 607-608 [31 P.2d 813].) Similarly, it has been said that where the amendment made no substantial change in the offense charged and required no additional preparation or evidence to meet the change, the denial of continuance was justified and proper. (*People* v. *Witt* (1975) 53 Cal.App.3d 154, 165 [125 Cal.Rptr. 653]; *People* v. *Suter* (1941) 43 Cal.App.2d 444, 462 [111 P.2d 23]; Witkin, Cal. Criminal Procedure (1963) Proceedings Before Trial, § 211, p. 199.)

■ The case at bench falls squarely within the above pronounced rules. To start with, it is clear that the amendment did not change the offense charged in the original information. While the prosecution lessened the burden of appellants' defense by omitting the charge of attempted escape, the primary charge of escape, the backbone of both the criminal complaint and the information, has remained unchanged.

Appellants' alternative claim that the trial court committed reversible error in excluding evidence which would have shown that appellants did not possess the specific intent to escape; that their judgment was severely impaired due to heavy intoxication; and that they intended to return to the prison camp after the "booze run" but they got lost, is equally lacking in substance.

■ Specific intent is not an element of the crime of escape. The crime is completed when the prisoner wilfully leaves the prison camp, without authorization, and whether he intends to return is immaterial to the commission of the crime. Thus the lack of a specific intent to escape is not a valid defense where a completed escape has occurred. The defense of diminished capacity is inapplicable where a specific intent is not a necessary element of the offense charged and in the event the escape is completed, it is of no significance that the defendant denies an intent to escape. In case of the completed offense of escape "*it is proper*

*to reject evidence showing a lack of motive or intent.."* (*People* v. *Gallegos* (1974) 39 Cal.App.3d 512 at pp. 517-518 [114 Cal.Rptr. 166], italics added; see also *People* v. *Hayes* (1971) 16 Cal.App.3d 662 at pp. 666-667, 670 [94 Cal.Rptr. 222]; *People* v. *Richards* (1969) 269 Cal.App.2d 768, 777, fn. 10 [75 Cal.Rptr. 597].) In the case at bench, the trial court lawfully eliminated the charge of attempted escape from the information.

## II

■   After deliberating for about two hours, the jury returned to the courtroom requesting clarification as to whether appellants could be held guilty of escape if they intended to return to the prison camp. In response, the court reread the instructions defining escape, including the admonition that intent to return is no defense. Shortly thereafter the jury reappeared and the foreman informed the court that they were deadlocked nine to three. The court then suggested without exerting any pressure on the jury that they go over the evidence once more and try to reach a verdict if possible.[2] Appellants contend that the above-quoted remark of the trial judge was tantamount to an implied coercion (a so-called mini-*Allen* charge) proscribed by *People* v. *Gainer* (1977) 19 Cal.3d 835 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73], and its progeny. We disagree.

---

[2]The relevant part of the record is set out as follows: "THE COURT: I want to ask you some questions, Mr. McCann. First of all, I do not want to know which the nine is or the three is, that remains with you. Now has the jury sifted through the evidence fully in this matter? I know you've been out what may seem to you quite a while. But do you feel that if you resumed your deliberations and went over the evidence carefully that there is any reasonable probability a jury might arrive at a verdict, here?

"JUROR MC CANN: I would say knowing what I do about the objections of two—of the three would be—I doubt that it would come to anything.

"THE COURT: Well, look—

"JUROR MC CANN: They're very convinced.

"THE COURT: I want to suggest something here. And I know you're all perhaps tired and you worked very hard. And I want to preface this by saying, *I do not mean to indicate in any way that you must reach a verdict. I don't want to pressure you in any way.* If the jury cannot reach a verdict—a jury cannot reach a verdict, you are the jury. *I do want to suggest that you give this a further try and sit down calmly and go over this evidence.* And if there is anything that I could do within my proper judicial function to assist you, I would be happy to do it.

"This has been a long trial, we're now in the sixth day. Of course, for you you've been here longer than you anticipated but there has been a lot of time put into this trial, relatively speaking. Yet, at the same time, *I do not pressure you in any way. If you work again and you can't, you can't.*

"But I would like to suggest in view of the rightful trial and time you've been out, it has been considerable, but still, if there's anything I could do to assist you, such as

In *Gainer*, the Supreme Court disapproved the so-called *Allen* charge which stated inter alia that the minority jurors must rethink their position in light of the majority's views and admonished the jury that the case must at some time be decided with the attendant implication that a failure to reach a verdict will inevitably result in a retrial of the case. The court reasoned that the first premise of the *Allen* instruction is inherently coercive because it exerts excessive pressure on the dissenting jurors to reconsider and relinquish their positions and to acquiesce in the verdict reached by the majority thereby jeopardizing the unanimity of the verdict. The second premise of the *Allen* charge, went on the court, constitutes a misstatement of the law because it postulates that after a hung jury the case will be necessarily retried, although it is well known that after a mistrial the prosecution in many instances fails to pursue the matter further by realizing that due to the weakness of the case another jury would likewise fail to reach a verdict. Based upon the above rationale the Supreme Court held that "it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." (*People* v. *Gainer, supra,* at p. 852.)

It is clear from the cited portion of the record that the trial court violated neither of the directives set out in *Gainer*. Nowhere did the trial

---

either—if there's any instructions you wish reread. If you have any questions about the law that you feel are not covered. If you want any testimony reread, the court will be happy to do whatever it could in it's power to assist you. If you think you might be able to arrive at a verdict, and again I say I'm not pressuring you into it. *I want to suggest you give this a little further try.* Look at the evidence clearly, you do have the instructions with you. And *I would like you to give this a little bit further of a try before we give this up completely.*

"And again, if I can assist you in any way in either of those two areas, either in the law or you felt you needed some testimony read, but if there's anything I could do within my authority, I'd be happy to. But *I would like you to go out and make one more effort to sit down and look at evidence, instructions and see and then, if it's still that way, okay. But I'd like you to give that try.* All right.

"JUROR MC CANN: When we originally sent the note to you, that was—we were very confused at that point and that helped considerably, but it did not help in the matter of the minority. So whether or not they individually could be clarified by you further that's the crux, right there, the original note.

"THE COURT: Perhaps, you should get together and if there is a further question, of course, it should always come from the jury as a whole. I wouldn't want it from an individual juror. On talking further, if there is a further question that the answer to which might clarify, I would be able to make what efforts I could within the law to answer it. *So I'll ask you, I know, it's late, I'll ask you to go out and make another try. Will you please?* Will the Bailiff take the jury back to the jury room." (Italics added.)

court say that the minority must rethink its position and yield to the opinion arrived at by the majority in order to reach a unanimous verdict, nor was it suggested or implied by the court that a potential failure to agree on the verdict will necessitate a retrial of the case. As referred to above, all that the trial court did was to request that the jury try to reach a verdict by going over the evidence once more. At the same time the trial court was emphatic to point out that it did not intend to put any pressure on the jury and that the jury was entirely free not to reach any verdict at all. Since it is entirely legitimate for the trial court to exhort the jury to continue their deliberations and urge them to further consider the matter with a view to reaching an agreement (*People* v. *Gainer, supra*, at p. 847, fn. 9) as did the trial court here, appellants' contention that the trial court's remarks were violative of the principles laid down in *Gainer*, must be held foundless and rejected.

Finally, it bears emphasis that the cases referred to by appellants are clearly distinguishable from the present instance. In both *United States* v. *Thomas* (D.C. Cir. 1971) 449 F.2d 1177 and *Thaggard* v. *United States* (5th Cir. 1965) 354 F.2d 735, the jury was instructed to the effect that the minority must rethink their position in view of the majority, the very vice disapproved and condemned by *Gainer*. In *People* v. *Barraza* (1979) 23 Cal.3d 675 [153 Cal.Rptr. 459, 591 P.2d 947], the trial court gave a so-called mini-*Allen* charge by explicitly advising the jury that the case involved considerable expense and also that the matter would be retried by another jury if the jury at bench could not reach a verdict. Needless to say, none of these features are present in the instant case.

## III

█ The prosecution alleged in the amended information that appellants suffered prior convictions within the meaning of Penal Code section 667.5. Appellants moved to strike the prior conviction allegations. The trial court granted the motion on the ground the enhancement provisions of the section were not met because the prison terms served by appellants at the time of the escape were not completed (Pen. Code, § 667.5, subd. (g)). Respondent argues that the ruling of the trial court is erroneous and appellants' sentence should be enhanced by one additional year pursuant to section 667.5, subdivision (b). Respondent's point is not well taken.

Penal Code section 667.5, subdivision (b) provides: "Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each *prior separate prison term* served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which defendant remained free of both prison custody and the commission of an offense which results in a felony conviction." (Italics added.)

In defining "prior separate prison term," subdivision (g) of section 667.5 spells out that "*A prior separate prison term* for the purposes of this section *shall mean a continuous completed period of prison incarceration imposed for the particular offense* alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and *including any reimprisonment after escape from such incarceration.*" (Italics added.)

The cited subsections of the statute make it apparent on their face that in order that the enhancement provisions of section 667.5 attach, the prior prison term must be a completed period of incarceration. However, where, as in the case at bench, a prisoner escapes from the prison while serving his lawful term, the period of his incarceration is necessarily incomplete and as a consequence the term he is serving cannot be counted for enhancement purposes. This clear meaning of the statute is further underlined by the provision which explicitly states that the complete period of prison incarceration imposed for the particular offense includes "any reimprisonment after escape from such incarceration."

We observe parenthetically that the cases cited by respondent (*People* v. *Butler* (1980) 104 Cal.App.3d 868 [162 Cal.Rptr. 913]; *People* v. *Mathews* (1980) 102 Cal.App.3d 704 [162 Cal.Rptr. 615]; *People* v. *Espinoza* (1979) 99 Cal.App.3d 59 [159 Cal.Rptr. 894]; *People* v. *Cole* (1979) 94 Cal.App.3d 854 [155 Cal.Rptr. 892]) all deal with parole cases and are ipso facto inapposite in the present case.

In light of our conclusion it is unnecessary to decide whether respondent's claim should be rejected on the further ground that in the absence of an appeal by the People, the issue of sentence enhancement cannot be entertained on appeal (cf. Pen. Code, § 1252 with Pen. Code,

§ 1238, subds. (a)(1) and (a)(6); *People* v. *Braeseke* (1979) 25 Cal.3d 691, 698-700 [159 Cal.Rptr. 684, 602 P.2d 384]; *People* v. *Burke* (1956) 47 Cal.2d 45, 53-54 [301 P.2d 241]; *People* v. *Zelver* (1955) 135 Cal.App.2d 226, 236-237 [287 P.2d 183].)

The judgments are affirmed.

Rattigan, J., and Kroninger, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.