**UNITED STATES of America, Plaintiff–Appellee,**

v.

**George Lee JACKSON, Jonathan Jackson, Defendant–Appellant.**

Nos. 00–6758, 00–6759.

United States Court of Appeals, Sixth Circuit.

April 25, 2003.

Before KENNEDY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

George Lee Jackson and his son, Jonathan Lee Jackson appeal the denial of their motions to suppress, filed after entry of their conditional pleas of guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Jonathan Lee Jackson appeals his sentence, claiming that the district court erred in sentencing him as a career criminal. Finding no constitutional infirmity in either the stop or the search challenged in the motions to suppress, we will affirm the district court's denial of those motions. We will affirm as well Jonathan Jackson's sentence.

The two Jacksons were stopped by Tennessee law enforcement officers after they were clocked by Officer Nicholson—the Palmer City, Tennessee, police chief and a certified canine handler—traveling eighty miles per hour in a seventy mile per hour zone. Nicholson began to follow the defendants, who noticed him and slowed down. Nicholson activated his video camera and his body microphone, and after observing the defendants' car weave a bit and cross the center line, he pulled their car over. Approaching the passenger side of the car where Jonathan was sitting, Nicholson noticed that the Defendants were acting very nervous, and, leaning toward the open car window, he could smell marijuana. He obtained from the driver, George Jackson, two rental agreements for the car–neither of which named either George or Jonathan as the lessee or authorized driver of the car–as well as George's driver's license. At about that time, Deputy Powell of the Marion County Sheriff's Department arrived on the scene, and spoke with Jonathan, who was still sitting in the car. Nicholson called in the rental information and George Jackson's driver's license information, and spoke with Powell, explaining that he had stopped the car because it had been speeding and weaving over the center line, and advising that he had smelled burned marijuana in the car. Powell said that he had smelled marijuana in the car also.

Nicholson asked George to consent to a search of the car, but George at first declined, saying that the car was not his and he therefore could not consent. When the officers advised him that he had that authority as the driver of the car, George agreed that they could search the passen-

ger compartment of the car[1] and his things in the back seat, but that he did not know about anything else in the car. Finding what appeared to be marijuana residue, stems and seeds on the floor of the front seat, Nicholson brought his trained drug dog, Barry, from the cruiser and instructed the dog to search the car for drugs. Barry alerted at several points on the car, including the center rear of the trunk; inside the trunk, the officers found a brick of about half a kilogram of cocaine.

After their arrest and indictment, both defendants moved to suppress the evidence relating to and resulting from the stop and the search of their automobile. After an evidentiary hearing, the magistrate judge recommended that the motions be denied, and the defendants filed timely objections. The district court adopted the magistrate judge's report and recommendation in its entirety. Prior to sentencing, Jonathan Jackson objected to the presentence report's designating him as a career offender under U.S. Sentencing Guidelines § 4B1.1, arguing first, that the Government had failed to give him notice under 21 U.S.C. § 851 that it intended to use a prior conviction to enhance his sentence, and second, that the escape conviction that the Government used for that enhancement was not a crime of violence. The district court rejected those arguments and sentenced Jonathan Jackson to 192 months' incarceration. The court sentenced George Jackson to 57 months' incarceration. This timely appeal followed.

We review the district court's denial of the motions to suppress for clear error as to factual findings; the court's legal conclusions we review de novo. *United States v. Ivy*, 165 F.3d 397, 401–02 (6th Cir.1998). We view the evidence in the light most favorable to the Government, *United States v. Wellman*, 185 F.3d 651, 655 (6th Cir.1999), recognizing that where there are two permissible views of the evidence, the district court's choice between them cannot be clearly erroneous. *United States v. Rose*, 889 F.2d 1490, 1494 (6th Cir.1989).

We do not find clear error in the district court's factual findings or error in the court's conclusions of law regarding the stop and the search of the car in which defendants were traveling. The record supports the court's findings that the car was traveling in excess of the posted speed limit. The Supreme Court has definitively held that the "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Tennessee law prohibits traveling in excess of the posted speed limit. *See* Tenn.Code Ann. 21 55–8–152. Hence, the stop was supported by probable cause.

■ We have held that "[o]nce the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999). The record supports the district court's findings that after Officer Nicholson stopped the car, both he and Officer Powell smelled marijuana in the vehicle; that Officer Nicholson's dog, Barry, was a properly trained drug dog; that Officer Nicholson was properly trained as the dog's handler; and that Barry alerted to the presence of drugs in the car the defendants were driv-

---

1. There is some dispute about whether George consented to a search of the entire passenger compartment. We conclude that this factual dispute is immaterial in light of the officers' detecting the smell of marijuana coming from the car.

ing. We conclude that during a reasonable stop of the car, the two police officers smelled marijuana coming from the car's interior, and that this discovery provided probable cause to search the automobile. *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir.1993). And it was not until after Officer Nicholson found what he believed to be marijuana residue, seeds and stems in the car, that he invoked the services of his drug dog. The district court did not err in concluding that the search of the defendants' car was supported by probable cause.

We review de novo both the district court's determination that Jonathan Jackson was a career offender within the meaning of U.S.S.G. § 4B1.1, *United States v. Dolt*, 27 F.3d 235, 237 (6th Cir.1994), and its conclusion that a particular offense is a crime of violence for purposes of that determination under U.S.S.G. § 4B1.2. *United States v. Arnold*, 58 F.3d 1117, 1120 (6th Cir.1995). Again we find no error in either the district court's reasoning or its conclusions.

21 U.S.C. § 851(a)(1) requires the Government to provide notice to a defendant that it intends to rely on previous convictions to increase a defendant's sentence. In *United States v. Mans*, 999 F.2d 966, 969 (6th Cir.1993), we held that "the requirements of § 851(a)(1) apply only to statutory sentence enhancement, not sentence enhancement under § 4B1.1 of the Sentencing Guidelines." *See also, United States v. Meyers*, 952 F.2d 914, 918 (6th Cir.1992). Because Jonathan Jackson's sentence was enhanced, not under § 841, but under the career offender sections of the Sentencing Guidelines, the notice provisions of § 851(a)(1) do not apply.

Finally, Jonathan Jackson complains that one of the prior convictions used to classify him as a career offender was an escape from an unsecured facility, and was therefore not a crime of violence as defined by U.S.S.G. § 4B1.2. Jonathan does not contest the fact that his escape was a felony. Rather, he argues that it was an escape from a halfway house; the relevant Guidelines sections do not mention escape from a nonsecure facility as "a crime of violence" for purposes of the career offender provisions; and this particular escape was not, in fact, violent.

The definition which the district court applied in determining that Jackson is a career offender is found in § 4B1.2(a)(2):

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (2) ... involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a)(2). We have adopted a "categorical" approach to determining which crimes constitute crimes of violence for purposes of § 4B1.2, which requires us to look at the statutory definition of a crime, not the particular factual circumstances of the particular offense before the court. *See United States v. Payne*, 163 F.3d 371, 374 (6th Cir.1998).

At issue here is Jonathan Jackson's conviction in 1992 in Kentucky on a single count indictment charging him with a violation of KRS 520.030:

**520.030 Escape in the second degree**

(1) A person is guilty of escape in the second degree when he escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody.

(2) Escape in the second degree is a Class D felony.

KRS 532.060 provides that a Class D felony is punishable by a term of imprisonment of not less than one year nor more than five years. KRS 532.060(2)(d). The

indictment charges that Jackson "committed the offense of Escape in the Second Degree when he escaped from Dismas House, a detention facility, or, being charged with or convicted of a felony, he escaped from custody." This indictment, although it is in the alternative and is, in that respect, not helpful, nonetheless specifically names the "detention facility" from which the defendant escaped, does not specify that, as Jackson maintains, that facility was a halfway house, and explicitly uses the term "escape" with regard to the charged offense.

In *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir.1999), we specifically adopted the reasoning of the Tenth Circuit, which held that the crime of escape "by its nature, presents a serious potential risk of physical injury and thus constitutes a crime of violence under § 4B1.2." *Id.* (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994)). In a recent unpublished opinion, we concluded that a defendant's escape from an "Honor Camp" was a crime of violence; we held that it was the inherently dangerous nature of the escape, and not the location from which the defendant made the escape, that made it a crime of violence under the Guidelines. *United States v. Watts*, No. 99–6366, 2001 WL 345472, *2–*3, 7 Fed.Appx. 526 (6th Cir. March 29, 2001).

We are bound by this circuit's directive in *Harris*, and we therefore find no error in the district court's conclusion that Jonathan Jackson's conviction for escape was a crime of violence for purposes of U.S.S.G. § 4B1.1.

For the foregoing reasons, we **AFFIRM** the judgments of the district court.