*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0355p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-5668

COLLIS PAUL LANCASTER, JR.,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 05-10027—James D. Todd, Chief District Judge.

Submitted: June 1, 2007

Decided and Filed: August 31, 2007

Before: MOORE and GRIFFIN, Circuit Judges; McKINLEY, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge. Defendant Collis Paul Lancaster, Jr. appeals his sentence of 188 months of incarceration. On appeal, Lancaster argues that the district court erred in determining that his prior Kentucky state conviction for second-degree escape under KY. REV. STAT. § 520.030 (2006) is a "violent felony" as defined in 18 U.S.C. § 924(e)(2)(B) and therefore improperly sentenced him as an armed career criminal. Defendant argues further that the district court erred in classifying him as an armed career criminal because his prior criminal convictions were not admitted nor submitted to the jury and proven beyond a reasonable doubt. Finally, he asserts that his sentence is unreasonable.

---

[*]The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

1

For the reasons set forth below, we affirm.  In doing so, we hold, inter alia, that a Kentucky state conviction for second-degree escape is a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

I.

Lancaster was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and one count of possessing marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  Later, defendant pleaded guilty to both counts.  At the time of his indictment, Lancaster's criminal history included two Tennessee state court convictions for aggravated assault and a Kentucky state court conviction for second-degree escape.

At his sentencing hearing, Lancaster objected to the recommendation contained in the presentence investigation report ("PSR") that he qualified as an armed career criminal because he has three prior convictions for violent felonies within the meaning of 18 U.S.C. § 924(e). Defendant argued that his prior Kentucky conviction for second-degree escape should not qualify as a "violent felony."  The district court overruled Lancaster's objections and sentenced him to a term of 188 months of incarceration.  This timely appeal followed.

II.

We review de novo the district court's ruling that Lancaster is eligible to be sentenced as an armed career criminal, *United States v. Flores*, 477 F.3d 431, 434 (6th Cir. 2007), and review the district court's sentence determination for "reasonableness." *United States v. Cage*, 458 F.3d 537, 540 (6th Cir. 2006).  The government bears the burden of establishing that a conviction qualifies for an ACCA sentence enhancement. *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005).

III.

First, Lancaster argues that the district court erred in determining that his prior conviction for second-degree escape is a predicate offense under the ACCA, 18 U.S.C. § 924(e).  In determining whether a defendant's conviction for second-degree escape is a violent felony for purposes of the ACCA, we take a categorical approach, looking "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions" to determine whether a sentence should be enhanced. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *Flores*, 477 F.3d at 434; *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006).

The ACCA provides that a defendant convicted of violating 18 U.S.C. § 922(g) who has three prior convictions for a "violent felony" or a "serious drug offense," committed on separate occasions, is subject to a mandatory minimum sentence of 15 years of imprisonment.  18 U.S.C. § 924(e)(1).  The statute defines "violent felony" as follows:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –
>
> (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).  Lancaster concedes that his two convictions for aggravated assault qualify as predicate offenses under § 924(e), but argues that the district court erroneously considered his second-degree escape conviction to qualify as a violent felony.

"A person is guilty of escape in the first degree when he escapes from custody or a detention facility by the use of force or threat of force against another person."  KY. REV. STAT. § 520.020 (2006). Kentucky's second-degree escape statute, on the other hand, provides that "[a] person is guilty of escape in the second degree when he escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody."  KY. REV. STAT. § 520.030 (2006).[1] Lancaster contends that because Kentucky's statutes distinguish between escapes involving the use of force (first degree) and escapes not involving force (second degree), his conviction for second-degree escape should not qualify as a violent felony under § 924(e).  We disagree.

Until recently, we had consistently regarded the crime of escape to be a violent felony within the meaning of 18 U.S.C. § 924(e)(2)(B) because it involves conduct that presents a serious potential risk of physical injury to others.  In *United States v. Harris*, 165 F.3d 1062, 1067-68 (6th Cir. 1999), we held that a conviction for violating former TENN. CODE ANN. § 39-5-706, which made it a felony for "any person confined in a county workhouse or jail or city jail or municipal detention facility upon any charge of or conviction of a criminal offense constituting a felony [to] escape or attempt to escape therefrom," was a crime of violence under U.S.S.G. § 4B1.2(1).[2]  In so doing, we adopted the following rationale:

> *Every* escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so. * * * A defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees.  Consequently, violence could erupt at any time.  Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

*Id.* at 1068 (emphasis added) (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994)).  We then applied the *Harris* rationale to hold that a conviction for violating a Tennessee statute which forbade "escaping or attempting to escape while confined in a county workhouse or jail upon any charge of or conviction of a criminal offense" was a violent felony for purposes of the ACCA. *United States v. Houston*, 187 F.3d 593, 594 (6th Cir. 1999).

*Harris* and *Houston* compel a similar result here.  Kentucky's second-degree escape statute is substantially similar to the statutes at issue in *Harris* and *Houston* because neither statute limited punishment to escapes involving the use of force.  Moreover, the reasoning adopted in *Harris* undercuts Lancaster's argument, because it focuses on the possibility of violence that is inherent to "every escape" rather than on the means used by the defendant in attempting the escape.

---

[1]Lancaster was convicted of second-degree escape in 1994.  The 1994 statutory language for escape is identical to the current version.

[2]"Although 'crime of violence' and 'violent felony' are terms of art whose definitions are not interchangeable, the operative language under § 4B1.2's definition of 'crime of violence' is identical to the language used to define 'violent felony' under 18 U.S.C. § 924." *Flores*, 477 F.3d at 437; *see also United States v. Oliver*, 20 F.3d 415, 417 (11th Cir. 1994) ("The only language in either § 4B1.2 or § 924(e) that might implicate the level of violence involved in the possession of a firearm is that which proscribes 'conduct that presents a serious potential risk of physical injury to another.'").

We note that our court has specifically addressed KY. REV. STAT. § 520.030's applicability to 18 U.S.C. § 924(e), albeit in unpublished decisions. In *United States v. Howard*, 216 F. App'x 463 (6th Cir. 2007) (unpublished), the defendant-appellant had five qualifying convictions for ACCA purposes, including two separate convictions for first-degree escape and a third conviction for second-degree escape. We rejected the defendant's argument that his convictions for escape were not predicate offenses under § 924(e):

> Defendant argues . . . that the prior escape convictions are not violent felonies. In Kentucky, "[a] person is guilty of escape in the first degree when he escapes from custody or a detention facility by the use of force or threat of force against another person." KY. REV. STAT. ANN. § 520.020. Second-degree escape occurs when a person "escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody." KY. REV. STAT. ANN. § 520.030. Under the categorical approach, defendant's first-degree escape convictions constitute violent felonies because the offense contains the element of use or threatened use of force. Additionally, all of defendant's escape convictions constitute violent felonies because escape carries a serious risk of potential physical injury if law enforcement or others attempted to interfere with an escape or retake an escapee.

*Id.* at 475 (citing *Houston*, 187 F.3d at 594-95; *Harris*, 165 F.3d at 1068). In addition, we have held that KY. REV. STAT. ANN. § 520.030 is a crime of violence for purposes of U.S.S.G. § 4B1.1. *United States v. Jackson*, 63 F. App'x 839, 842-43 (6th Cir. 2003) (unpublished). Although *Howard* and *Jackson* are unpublished, and therefore not precedentially binding under the doctrine of stare decisis, *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 n.4 (6th Cir. 2007), they are persuasive and consistent with our reasoning in *Harris*.

Also, in *United States v. Esteppe*, 483 F.3d 447, 451 (6th Cir. 2007), we held that a Kentucky state "conviction for escape similarly constitutes a crime of violence under this court's decision in [*Harris*]" for purposes of the "career offender" enhancement provision of U.S.S.G. § 4B1.1. However, the *Esteppe* opinion does not specify whether the defendant's Kentucky escape conviction was for first- or second-degree escape.

Finally, the Supreme Court's recent holding in *James v. United States*, 550 U.S. —, 127 S. Ct. 1586 (2007), that a Florida state court conviction for attempted burglary is a violent felony as defined by the ACCA, supports our "powder keg" reasoning. Concluding that an attempted burglary "involves conduct that presents a serious potential risk of physical injury to another," the Supreme Court explained:

> The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party – whether an occupant, a police officer, or a bystander – who comes to investigate. That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.

> Attempted burglary poses the same kind of risk. Interrupting an intruder at the doorstep while the would-be burglar is attempting a break-in creates a risk of violent confrontation comparable to that posed by finding him inside the structure itself.

*James*, 127 S. Ct. at 1594-95.

However, in *United States v. Collier*, — F.3d —, 2007 WL 2001638 (6th Cir. July 12, 2007), a panel of this court held recently that a conviction under Michigan's prison escape statute, MICH.

COMP. LAWS ANN. § 750.193, was not a conviction for a violent felony under the ACCA. We did so for two reasons. First, the Michigan statute at issue applied not only to "jailbreaks," but also to "walk away escapes," thereby encompassing the *Collier* defendant's failure to report to his new correctional facility after he traveled between facilities via a Greyhound bus unaccompanied by any correctional officers. *Id.* at *3. We reasoned that, although a "jailbreak" escape may present a serious risk of physical injury or violence, "[w]e doubt that a statute covering this 'failure to report' variety of escape necessarily 'involves conduct that presents a serious potential risk of physical injury to another.'" *Collier*, 2007 WL 2001638, at *3 (quoting 18 U.S.C. § 924(e)(2)(B)). We rationalized further:

> We recognize that the circuits are split on whether the distinction between a jailbreak and a "walk away" is meaningful. Some have said or suggested that a "walk away" escape should not be considered categorically violent. Others have rejected any distinction between a jailbreak and a "walk away," typically reasoning that the "potential risk" officers might encounter in attempting to re-apprehend the escapee is "serious" enough to justify characterizing the offense as violent. The D.C. Circuit, however, has noted that this reasoning proves too much. That is, "While it may be true that the recapture of an escapee inherently contains a risk of violent encounter between the escapee and the arresting officers, the same is true as to the capture of any lawbreaker"; according to this logic, "all crimes become crimes of violence."

*Id.* (quoting *United States v. Thomas*, 333 F.3d 280, 282 (D.C. Cir. 2003)).

The dichotomy between "jailbreaks" and "walk away escapes" may be problematic with regard to minimum security jails or prisons possessing no walls or fences. Moreover, because the terms are not defined, it is difficult to categorize as either a "jailbreak" or a "walk away escape" numerous escapes from custody, such as flight from a courthouse or escape from a hospital. Many such non-"jailbreak" escapes pose an equal, if not greater, "serious potential risk of physical injury to another" as an escape from jail. Thus, the categorical distinction made by the *Collier* court and the D.C. Circuit does not appear to fulfill its purpose of defining the threat.

Second, the *Collier* court distinguished between the temporal scope of the Tennessee statute at issue in *Harris* and Michigan's prison escape statute. Although "Tennessee courts have consistently interpreted escape to be a 'continuing offense' that lasts until the defendant is re-apprehended," we observed that "Michigan courts have consistently held that escape is complete once the defendant leaves custody without having been discharged." *Id.*[3] Thus, we reasoned in *Collier*, if "a state has defined escape as lasting until recapture, it seems more sensible to consider the possible circumstances of this event . . . when deciding whether escape is a 'violent felony' or 'crime of violence.'" *Id.* Conversely, if "a state has defined escape as complete when the defendant

---

[3]The *Collier* panel did not rely on Michigan Supreme Court precedent regarding this issue of state law. When we are asked to interpret state law, we look to state supreme court decisions or, if the state supreme court has been silent on the relevant issue, we anticipate how the state supreme court would likely construe its state law. *See, e.g., Brown v. Raymond Corp.*, 432 F.3d 640, 646 (6th Cir. 2005) (noting that in construing state law, "we are of course bound by the Tennessee Supreme Court's construction of the [Tennessee Products Liability Act], not that of the Tennessee Court of Appeals"); *Allstate Ins. Co. v. Thrifty Rent-A-Car Systems, Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). In anticipating how the state supreme court would rule, "we look to the decisions of the state's intermediate courts unless we are convinced that the state supreme court would decide the issue differently." *Melson v. Prime Ins. Syndicate, Inc.*, 429 F.3d 633, 636 (6th Cir. 2005) (citing *United of Omaha Life Ins. Co. v. Rex Roto Corp.*, 126 F.3d 785, 789 (6th Cir. 1997)). We would give the same deference to published decisions of the Michigan Court of Appeals rendered after November 1, 1990, because such opinions are binding on all panels of the Court of Appeals under the doctrine of stare decisis unless overruled by a special panel or by the Michigan Supreme Court. M.C.R. 7.215(J)(1). The Court of Appeals decisions cited by the *Collier* court, however, predate November 1, 1990, and therefore lack the precedential significance of a post-November 1, 1990, Court of Appeals decision.

leaves custody without having been discharged, it is inappropriate to speculate about the circumstances of the defendant's ultimate apprehension because that conduct simply is not part of the offense." *Id.*

As in *Collier*, the appellate record here does not include the charging documents or jury instructions for Lancaster's prior escape conviction. *See Collier*, 2007 WL 2001638, at *2. Thus, we may only consider the statutory definition of second-degree escape under the categorical approach required by *Taylor*. 495 U.S. at 600.

Similar to MICH. COMP. LAWS ANN. § 750.193, Kentucky's second-degree escape statute applies to escapes that may be categorized as "walk away escapes." *See, e.g., Weaver v. Commonwealth*, 156 S.W.3d 270, 271 (Ky. 2005) (holding that prisoner who participated in Home Incarceration Program while wearing electronic monitoring device committed second-degree escape when he failed to report to the Program's office for a scheduled meeting); *Thacker v. Commonwealth*, 115 S.W.3d 834, 835 (Ky. Ct. App. 2003) (holding that prisoner who failed to return to the detention center from his work release assignment committed second-degree escape); *Reynolds v. Commonwealth*, 113 S.W.3d 647, 649 (Ky. Ct. App. 2003) (holding that prisoner committed second-degree escape when he failed to timely return to detention center from his work release assignment; defendant had apparently gotten drunk, passed out, and returned to the detention center the following morning).

However, KY. REV. STAT. § 520.030, unlike MICH. COMP. LAWS § 750.193, has not been construed as a completed offense once the prisoner has impermissibly left custody. On this issue, the majority rule among the various jurisdictions is that the crime of escape is considered a continuing offense. *See Harbin v. State*, 581 So. 2d 1263, 1266 (Ala. Crim. App. 1991); *Lacey v. State*, 54 P.3d 304, 307 (Alaska Ct. App. 2002); *McCoy v. State*, 542 A.2d 1215 (Del. 1988); COLO. REV. STAT. § 18-8-201(2) ("'Escape' is deemed to be a continuing activity commencing with the conception of the design to escape and continuing until the escapee is returned to custody or the attempt to escape is thwarted or abandoned."); *People v. Miller*, 509 N.E.2d 807, 808 (Ill. App. Ct. 1987); *State v. Francois*, 577 N.W.2d 417, 420 (Iowa 1998); *State v. Burnett*, 195 N.W.2d 189 (Minn. 1972); *State v. Jones*, 556 S.W.2d 736, 738 (Mo. Ct. App. 1977); *State v. Stull*, 909 P.2d 1180, 1182 (Nev. 1996); *State v. Martinez*, 781 P.2d 306, 309 (N.M. Ct. App. 1989); *State v. White*, 203 S.E.2d 644, 646 (N.C. Ct. App. 1974); *State v. Campbell*, No. E2005-01849, 2006 Tenn. Crim. App. LEXIS 907, at *23-24 (Tenn. Crim. App. Nov. 21, 2006) (unpublished); *State v. Lewis*, 711 A.2d 669, 671-72 (Vt. 1998); *Parent v. State*, 141 N.W.2d 878 (Wisc. 1966).

Our Supreme Court and all federal circuits follow the majority rule, holding that escape from federal custody is a continuing offense. *United States v. Bailey*, 444 U.S. 394 (1980). As the Supreme Court stated in *Bailey*, 444 U.S. at 413:

> . . . we think it clear beyond peradventure that escape from federal custody as defined in § 751(a) is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure. Given the continuing threat to society posed by an escaped prisoner, "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States*, 397 U.S. 112, 115 (1970). Moreover, every federal court that has considered this issue has held, either explicitly or implicitly, that § 751(a) defines a continuing offense. See, *e.g., United States v. Michelson*, 559 F.2d 567 (CA9 1977); *United States v. Cluck*, 542 F.2d 728 (CA8), cert. denied 429 U.S. 986 (1976); *United States v. Joiner*, 496 F.2d 1314 (CA5), cert. denied, 419 U.S. 1002 (1974); *United States v. Chapman*, 455 F.2d 746 (CA5 1972).

Only Michigan and five other states arguably define "escape" as a discrete act, completed when the prisoner first leaves state custody. *See Williams v. State*, 67 S.W.3d 548, 556 (Ark. 2002); *People v. George*, 109 Cal. App. 3d 814 (Cal. Ct. App. 1980); *Gaskin v. State*, 869 So. 2d 646, 647-48 (Fla. Ct. App. 2004); *People v. Jackson*, 394 N.W.2d 480, 485 (Mich. Ct. App. 1986); *State v. Fore*, 62 P.3d 400, 404 (Ore. Ct. App. 2003); *Spakes v. State*, 913 S.W.2d 597, 598 (Tex. Crim. App. 1996).

We conclude that the majority rule adopted by the Supreme Court is the better reasoned approach. We agree with the Supreme Court that an escaped prisoner poses a "continuing threat to society." Absent guidance from the Kentucky Supreme Court, we apply the majority rule to Kentucky's second-degree escape statute and distinguish *Collier* on this ground.

The majority rule is appropriate under Kentucky law for several reasons. First, we think it significant that in *Bailey*, the Supreme Court explained that where escape is construed as a continuing offense "an escapee can be held liable for failure to return to custody as well as for his initial departure." *Bailey*, 444 U.S. at 413. Although the Kentucky Legislature did not explicitly define escape as a continuing offense, it is telling that "escape" encompasses both an initial "departure from custody" and the "failure to return to custody . . . ." KY. REV. STAT. § 520.010 (5). Second, the language in KY. REV. STAT. § 520.030, as it relates to the actus reus of the offense, is substantially similar to 18 U.S.C. § 751(a), which the Supreme Court in *Bailey* held "clear beyond peradventure . . . [to be] a continuing offense . . . ." *Bailey*, 444 U.S. at 413. *Compare* KY. REV. STAT. § 520.030 ("A person is guilty of escape in the second degree when he escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody") *with* 18 U.S.C. § 751(a) (1976) ("Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody . . . shall . . . be fined not more than $5,000 or imprisoned not more than five years, or both.")

Finally, as we explained in *Collier* that where escape is defined as a discrete act, "complete when the defendant leaves custody without having been discharged, it is inappropriate to speculate about the circumstances of the defendant's ultimate apprehension because that conduct simply is not part of the offense." *Collier*, 2007 WL 2001638 at *3. However, this concern is not present where, as here, escape is a continuing offense. In these circumstances, the offense is not completed until the defendant has been recaptured, and it is therefore "sensible to consider the possible circumstances of [reapprehension] . . . when deciding whether escape is a 'violent felony' or 'crime of violence.'" *Id.* It is therefore consistent with *Collier* for us to consider the consequences and circumstances of a Kentucky prisoner's escape from custody; *Harris* and *Houston* counsel us that these circumstances involve "conduct that presents a serious potential risk of physical injury to another." Accordingly, we hold that KY. REV. STAT. § 520.030 is a violent felony under the ACCA.

IV.

Next, Lancaster argues that the district court erred in sentencing him as an armed career criminal because his prior criminal convictions are elements of the offense and must be proven beyond a reasonable doubt or admitted to by defendant. Defendant concedes that the Supreme Court's Sixth Amendment jurisprudence has created an exception for prior convictions, and that this court has held consistently that the fact and nature of prior convictions need not be submitted to the jury for sentencing under the ACCA. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998) (holding that fact of prior conviction need not be charged in indictment); *United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005) (rejecting claim that the failure of the district court to submit to the jury the question

of the nature of defendant's prior convictions under the Armed Career Criminal Act violated *Apprendi*). Recently in *James v. United States*, the Supreme Court reaffirmed its holding in *Almendarez-Torres* that prior convictions need not be treated as an element of the offense for Sixth Amendment purposes, *see James*, 127 S. Ct. at 1600 n.8. Lancaster's argument therefore lacks merit.

V.

In his final assignment of error, defendant argues that his sentence is unreasonable. Although he does not state so explicitly, Lancaster appears to argue that his sentence is procedurally unreasonable, contending that the "court failed to articulate its reasoning in deciding to impose the defendant's sentence which would allow for reasonable appellate review." He specifically asserts that the district court gave disproportionate weight to the Guidelines range and did not address his mental health and childhood experience issues raised in his pre-sentence position paper.[4] (*Id.*)

For purposes of sentencing, Title 18 U.S.C. § 3553 requires a district court to consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed –
(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

* * *

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(3), (6), (7).

The main thrust of defendant's argument is that the district court erred by focusing on the Sentencing Guidelines and ignored the remaining § 3553(a) factors. We considered and rejected a similar claim in *United States v. Williams*, 436 F.3d 706, 708-09 (6th Cir. 2006).

In the present case, like *Williams*, although the district court did not engage in a "ritual incantation" of the § 3553(a) factors, the record reveals that the district court adequately considered

---

[4]In the last paragraph of his argument, Lancaster also contends that his sentence is substantively unreasonable. ("Because the sentence was greater than necessary to comply with the purposes of § 3553(a), it also constituted a substantive violation of *Booker*.") Because it was not supported by a developed legal argument, Lancaster has forfeited this claim. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 525 n.4 (6th Cir. 2006) (stating that an issue mentioned in a cursory manner in an appellate brief is forfeited); *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived").

the factors.  *Rita v. United States*, 551 U.S. — , 127 S. Ct. 2456 (2007); *see also United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005) (observing that "this court has never required the 'ritual incantation' of the factors to affirm a sentence").  First, the district court addressed defendant's criminal history.  ("I'm troubled, Mr. Lancaster, by this long criminal history that you have.  And this is not just a long minor criminal history.  You have, when you were a much younger man, committed violent crimes, aggravated assault, one of which could have resulted in serious injury or death.  You've had drug offenses.  You've had escape offenses.")  The district court next considered the nature and circumstances of the offense.  ("Now, the fact that you qualified as [an] armed career criminal caused your guidelines to be much higher than – or higher than they normally would have been, so that would justify a sentence at the low end of the guidelines range.  Also, the quantity of drugs in your case, a small quantity, would justify a sentence at the low end of the guideline range.")  The district court stated also that it had considered the need for the sentence to reflect the seriousness of the offense, to provide just punishment, and to afford adequate deterrence from future criminal conduct.  ("Considering . . . the need to appropriately punish you for what you've done" and "the message that I want to send to other people who commit crimes . . . .")

Finally, the sentence imposed by the district court reflects its consideration of the remaining § 3553(a) factors and Lancaster's proffered arguments.  By recommending that the sentence be served as close to home as possible, because of Lancaster's parental duties and concerns, the court evidenced consideration of the "kinds of sentences available."  *Williams*, 436 F.3d at 708 (noting that recommendation for defendant to serve sentence close to home showed that the district court took into account "the kinds of sentences available").  Also, in ordering Lancaster to participate in a program of mental health treatment as part of his probation, the district court considered the need "to provide the defendant with needed . . . medical care" and Lancaster's statement in his position paper that he "has had mental health issues."

In summary, the district court's reasoning in imposing the sentence is clear, *United States v. Liou*, 491 F.3d 334 (6th Cir. 2007), and defendant's § 3553(a) issues were adequately addressed.  *United States v. Thomas*, — F.3d — , 2007 WL 2287740 (6th Cir. Aug. 10, 2007).

Following our review of the record, we conclude that the district court properly understood the Guidelines to be advisory and adequately considered the § 3553(a) factors.  *Rita*, 127 S. Ct. at 2469.

## VI.

For these reasons, we affirm defendant's sentence.