[Crim. No. 549.     Third Appellate District.—May 31, 1921.]

## THE PEOPLE, Respondent, v. EUGENE QUIJADA, Appellant.

[1] CRIMINAL LAW—ESCAPE OF STATE PRISON CONVICT—SUFFICIENCY OF EVIDENCE.—An inmate of a state prison who in conjunction with other prisoners boarded a locomotive engine in the prison yard and ran it through a locked gate and beyond the wall of the prison was guilty of an escape under section 105 of the Penal Code, and not merely of an attempt to escape, although he was recaptured before he had gotten beyond the territory connected with the prison grounds.

[2] ID.—DEFINITION OF ESCAPE.—An escape is the unlawful departure of a prisoner from the limits of his custody.

APPEAL from a judgment of the Superior Court of Sacramento County. Malcolm C. Glenn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Merlin W. Stewart for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was convicted of escaping from the state prison at Folsom while confined as a prisoner therein under a conviction of robbery. The prosecution was instituted under section 105 of the Penal Code providing: "Every person confined in a state prison, for a term less than for life, who escapes therefrom, is punishable by imprisonment in a state prison for a term of not less than one year; said second term of imprisonment to commence from the time he would otherwise have been discharged from said prison."

[1] The only point made by appellant is that the evidence is insufficient to show more than "an attempt to escape." In this, however, we think appellant is in error.

There is evidence to show that, while defendant was working in the stoneyard of the prison, a locomotive was driven near the place, and defendant in conjunction with two other prisoners boarded the engine and attacked the engineer and fireman and drove them from the engine. Said prisoners then ran the engine through the prison yard and through a large gate across the track and beyond the wall of the prison. This gate was locked with a large padlock, but they forced the engine through it and proceeded along the track until they came to a tank which is used to store oil for the engine. They stopped the engine there, got off and set fire to the tank. They started then toward what is known as the old quarry, but were recaptured before proceeding very far, as an alarm had been given. J. W. Drullinger, one of the prison guards, testified: "These three prisoners had set the tank on fire. They looked up and saw me, and started to run for the bank. Q. 'And this defendant was one of them. A. He was the one behind Clifford, yes, sir. Q. And he was through the gate and up at the oil tank when you first saw him? A. At the oil tank, yes. Q. And had completely made his escape from the prison proper? A. Outside of the prison wall altogether, yes, sir.'" He was further asked if the defendant was out of his sight when the defendant went into the willows and he answered: "When he went in the willows he was out of my sight; he went in this bunch of willows, I didn't see him in there. I was taking care of the other men who were under my control until Mr. Eldridge came up there."

Albert Eldridge, another guard, testified as to the defendant: "I first saw him right in here [showing on the diagram], in some willows, going over here back to an oil car that was in front of this engine. Q. 'Now, that is all across the deadline and out of the prison proper? A. Out through those gates. Q. Outside of the prison, away from it? A. Yes, sir. Q. He had completed his escape from the prison proper? A. Yes, sir.' "

[2] The term "escape" is not defined in the code, but a definition as clear and concise as any found in the authorities is, "the unlawful departure of a prisoner from the limits of his custody."

Among the cases cited, under "escape" in Words and Phrases, are *Wheeler* v. *State,* 39 Kan. 163, [17 Pac. 856], and *Riley* v. *State,* 16 Conn. 47. In the former it is said: "The common legal definition of the term, however, means a violation or private evasion out of some lawful custody," and in the latter it is declared: "An 'escape' within the meaning of the law which makes it an offense to escape from the custody of the law, is any departure from prison, or from the custody of an officer, which is not authorized by law."

There is no doubt that the testimony for the people herein brings this case within the doctrine of these decisions. When the defendant went beyond the prison walls without permission of the authorities he unlawfully departed from the limits of his custody, and it is immaterial that he did not get entirely beyond the territory connected with the prison grounds. It was his duty to remain within the walls as he very well knew, and when he transcended these limits he necessarily "violated his lawful custody."

We can see no merit in the appeal and the judgment and order are affirmed.

Finch, P. J., and Hart, J., concurred.