Filed 7/12/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S187020 |
| v. | ) | |
| | ) | Ct.App. 6 H034382 |
| ROBIN BAILEY, | ) | |
| | ) | Monterey County |
| Defendant and Appellant. | ) | Super. Ct. No. SS082741A |
| _____ | ) | |

We granted review to determine whether, after finding insufficient evidence to support a conviction for escape from state prison, an appellate court may reduce the conviction to attempt to escape, notwithstanding the trial court's failure to instruct the jury on attempt. In this case, the Court of Appeal refused to modify the conviction to attempt to escape on the ground that attempt to escape is not a lesser included offense of escape and the trial court did not instruct the jury on attempt to escape. Because attempt to escape is not a lesser included offense of escape — attempt to escape contains a specific intent element not present in escape — we affirm the judgment of the Court of Appeal.

## I. FACTS AND PROCEDURAL HISTORY

On June 18, 2008, defendant Robin Bailey was a felon and a prisoner at the Correctional Training Facility in Soledad. He was assigned to a cell in the G Wing of the Central Facility. Shortly before 7:30 a.m., correctional officers discovered the facility's maintenance area had been broken into and tools were

missing. An officer noticed a cut in the fence between the maintenance area and an area containing Conex storage boxes. When the officer went to investigate, a staff electrician pointed out an inmate outside the fence in an area accessible only through a locked gate.

At 7:55 a.m., a correctional officer assigned as a gunner on the roof of the O Wing noticed defendant hiding behind a Conex box. Defendant was "darting his head back and forth" and was in an area where inmates were not permitted without authorization. Defendant was wearing the standard California Department of Corrections and Rehabilitation jacket, but the bright yellow lettering "CDC Prisoner" had been blacked out.

Defendant had reached the location where he was apprehended by sawing through the bars of his cell window, removing the window pane, cutting through a metal screen, and breaching four fences: the G Wing perimeter security fence, the Central chapel yard gate, a rooftop fence in the Central Facility textile building, and the fence separating the maintenance area from the Conex boxes.

Officers later discovered a hacksaw blade on top of the Conex box and tools underneath it. Near the breach in the maintenance area fence, officers found wire strippers. In defendant's cell, officers found a lump of clothing on an upper bunk covered by blankets. The next day, officers searched defendant's cell more thoroughly and discovered hacksaw blades.

Defendant admitted to prison officials that he was trying to escape. A sergeant testified that defendant admitted that he planned to escape by cutting through a fence and making his way from the Central Facility to the North Facility, where he planned to cut through another fence and be picked up by an accomplice. His plan failed because it took him "so long to cut out of the G Wing fence" and because sawing through the fence was so loud. Defendant also wrote letters to his children admitting that he tried to escape.

2

In a single count, the prosecution charged defendant with "escape from custody," in violation of Penal Code section 4530, subdivision (b).[1]  However, in that count, the information alleged that defendant "did willfully and unlawfully escape and attempt to escape."  During pretrial proceedings, the prosecutor advised the trial court:  "Although [defendant] didn't make it outside the outer perimeter, I feel legally it qualifies as an escape since he sawed through the bars of his cell and made several holes in several fences and was where he was not authorized to be."  She later asserted, "I'm trying this case as an escape.  If there was evidence that the escape was only an attempted escape, it's the same charge.  If anyone wants to argue attempted escape, we will need an attempt instruction, which I didn't put down the CALJIC number for. [¶] It will be CALCRIM number 460 if that should become necessary."

 At trial, defendant maintained he sawed through four layers of prison security to attack another inmate, against whom he held a grudge.  Maps of the prison showed defendant had actually sawed his way *further into* the facility before his capture.  Defendant testified that he did not intend to escape.  He stated that "it was no escape at all.  When I reached the maintenance area, I reached my final destination as far as leaving out of my cell."

When finalizing jury instructions, the court commented, "Attempts generally are lessers of virtually every type of charge . . . because of the instruction, it would appear that . . . since we only give attempts where there's sufficient evidence of an attempt not a completed act, here we have an admission of a completed act."  Both attorneys agreed an instruction on attempt should not be given.

---

**1**      All statutory references are to the Penal Code.

The trial court instructed the jury on the charged offense as follows: "The defendant is charged with escape, in violation of Penal Code section 4530(b). To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant was a prisoner who had been convicted of a felony; two, the defendant was confined in prison; three, and the defendant escaped from the prison. [¶] Escape means the unlawful departure of a prisoner from the physical limits of his or her custody. It is not necessary for the prisoner to have left the outer limits of the institution's property. However, the prisoner must pass beyond some barrier, such as a fence or wall, intended to keep the prisoner within a designated area." Regarding the escape charge, the court further instructed on general intent, requiring only "wrongful intent," i.e., "when he or she intentionally does a prohibited act."

In closing arguments, defense counsel argued that going through the bars or fences inside a prison facility was insufficient to prove an escape. The prosecutor objected to counsel's argument as misleading and unsupported by the escape instruction, which stated it was not necessary to have left the outer limits of the property. During subsequent discussions outside the jury's presence, defense counsel referred to *People v. Lavaie* (1999) 70 Cal.App.4th 456, which neither the trial court nor the prosecutor had reviewed. Defense counsel argued that *Lavaie* supported the defense theory that a prisoner must exit the institution's exterior, perimeter fence to be guilty of escape and that breaching interior security walls was insufficient. The prosecutor maintained that defense counsel's argument was contrary to the agreed-upon instructions and that "any case law in contradiction of [them] is not the jury instruction."

The trial court indicated it would permit the prosecution to amend the information to add attempt to escape, and to allow argument on the point. The court stated, "It would appear then that the jury would simply have to make a

4

determination as to whether, in fact he truly intended to return, if they conclude that it's not an escape." Defense counsel objected to the court's proposal to allow the prosecution to reopen closing argument and add an attempt charge. He argued that it had been agreed the court would not instruct on attempt and that the case would be tried as a "straight escape." Counsel asserted the defense would prefer to limit closing argument. Based on defendant's request, the court agreed not to instruct the jury on attempt. Defense counsel then simply concluded his argument by asking the jury to determine whether or not defendant had escaped.

The jury found defendant guilty of escape from prison without force or violence (§ 4530, subd. (b)) and that he had suffered five prior serious felony convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The trial court sentenced defendant under the Three Strikes Law.

In a published opinion, the Court of Appeal found insufficient evidence of escape and reversed the conviction. Relying on *People v. Lavaie*, *supra*, 70 Cal.App.4th 456, the Court of Appeal concluded that for conviction of an escape, it is not enough for the inmate to have reached an unauthorized location or be out of bounds within the prison facility. Rather, the term "escape" must be interpreted in light of the plain language of the statute, requiring an actual escape beyond the outer boundary of the prison facility having custody of that prisoner. Accordingly, the court held that "[a]n inmate who remains within the bounds of the prison has not escaped that prison *even if* he has broken out of his cell and breached interior security barriers." (Italics added.)

The Court of Appeal concluded that although "the evidence was more than ample to establish an attempt to escape from prison," it refused to modify the escape conviction to attempt to escape. The court noted that because attempt to escape contains an element of specific intent to escape that escape does not, attempt to escape is not a lesser included offense of escape. Because evidence of

5

defendant's intent was conflicting and the trial court failed to instruct the jury on attempt to escape, the court held that modification of the conviction to an attempt would deprive defendant of his Fifth Amendment right to due process and Sixth Amendment right to a jury trial.

The Attorney General petitions for review only on the modification issue. The Attorney General does not challenge the Court of Appeal's conclusion regarding the sufficiency of the evidence on the escape conviction. We granted review solely on the modification issue.[2]

## DISCUSSION

The Attorney General contends that attempt to escape is a lesser included offense of escape, and that therefore an appellate court has the statutory power, under sections 1181, subdivision 6, and 1260, to reduce the escape conviction to attempt to escape. As we explain, because attempt to escape is not a lesser included offense of escape, the Court of Appeal correctly concluded it could not modify the escape conviction to attempt to escape.

We have "long recognized that under Penal Code sections 1181, subdivision 6, and 1260, an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense."[3] (*People v. Navarro* (2007) 40 Cal.4th 668, 671, fn. omitted; see *id*. at

---

[2] Because the sufficiency of the evidence of an escape is beyond the scope of our grant of review (Cal. Rules of Court, rule 8.516(a)(1) &(b)(1)), we express no view on the propriety of the Court of Appeal's holding on this issue.

[3] Section 1181, subdivision 6 provides that a trial court may grant a new trial "[w]hen the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without

*(footnote continued on next page)*

p. 678.)  We have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense:  the "elements" test and the "accusatory pleading" test.  (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.)  The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater.  (*People v. Smith* (1998) 64 Cal.App.4th 1458, 1471.)  In other words, " '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' "  (*People v. Reed, supra*, 38 Cal.4th at p. 1227; see also *People v. Pearson* (1986) 42 Cal.3d 351, 355.)  Under the accusatory pleading test, a lesser offense is included within the greater charged offense if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense.  (*People v. Reed, supra*, 38 Cal.4th at pp. 1227-1228; *People v. Lopez* (1998) 19 Cal.4th 282, 288-289.)

Section 4530, subdivision (b) provides, in pertinent part, that "[e]very prisoner who commits an escape or attempts an escape as described in subdivision (a), without force or violence, is punishable by imprisonment . . . ."  Subdivision (a) of section 4530, provides, in pertinent part, that "[e]very prisoner confined in a state prison who, by force or violence, escapes or attempts to escape therefrom . . .

*(footnote continued from previous page)*

granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed."

Section 1260 provides that "[t]he court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed . . . and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

7

is punishable by imprisonment . . . ."  Section 4530 does not define escape or attempt to escape.**4**

Although the term "escape" is not statutorily defined, case law has defined "escape" as the unauthorized or " 'unlawful departure of a prisoner from the limits of his custody.' "  (*People v. Quijada* (1921) 53 Cal.App. 39, 41; accord, *United States v. Bailey* (1980) 444 U.S. 394, 407 ["courts and commentators are in general agreement that [the term "escape"] means absenting oneself from custody without permission"].)  "The crime is completed when the prisoner wilfully leaves the prison camp, without authorization. . . . "  (*People v. George* (1980) 109 Cal.App.3d 814, 819.)  Cases after *Quijada* have confirmed that escape requires no specific mental state, only general criminal intent.  (See, e.g., *People v. George, supra*, 109 Cal.App.3d at p. 819; *People v. Hayes* (1971) 16 Cal.App.3d 662, 666-668; *People v. Richards* (1969) 269 Cal.App.2d 768, 777, fn. 10; accord, *United States v. Bailey, supra*, 444 U.S. at pp. 407-408 [intent to avoid confinement with purpose of leaving jail without authorization not required for statutory violation of escape from federal custody where "escape" not defined in statute].)  The only requisite for its commission is that the defendant intentionally do the act which constitutes the crime.  (*People v. Hayes, supra*, 16 Cal.App.3d at p. 667; *People v. Richards, supra,* 269 Cal.App.2d at p. 777, fn. 10; *People v. Miller* (1961) 196 Cal.App.2d 171, 175-176.)  Thus, for instance, evidence that a defendant was voluntarily intoxicated or intended to return when he left is generally immaterial to the commission of escape.  (*People v. George, supra*, 109 Cal.App.3d at pp. 819-

---

**4**	Former statutes punishing "escape" and "attempt to escape" also did not contain definitions of those terms.  (See former §§ 4530, 4531, added by Stats. 1941, ch. 106, § 15, p. 1124; former §§ 105, 106, repealed by Stats. 1941, ch. 106, § 1, p. 1080.)

8

820; *People v. Kelly* (1968) 261 Cal.App.2d 708, 710-712; see also *People v. Haskins* (1960) 177 Cal.App.2d 84, 88-89.)

Unlike escape, attempt to escape requires a specific intent to escape. (*People v. Gallegos* (1974) 39 Cal.App.3d 512, 517 (*Gallegos*); accord, *Brawner v. United States* (D.C. 2009) 979 A.2d 1191, 1193 [statutory violation of "escape or attempt to escape" requires proof defendant "acted with the intent to avoid further confinement" for attempt but not for completed offense].) Section 21a states that "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (See also *People v. Camodeca* (1959) 52 Cal.2d 142, 145.) Thus, "[i]t is not possible to attempt to escape without intending to escape." (*Gallegos, supra*, 39 Cal.App.3d at p. 516.) Consequently, it is "error not to instruct that the crime of attempt to escape require[s] a specific intent on the part of [the defendant] to escape from the jail, plus a direct, unequivocal act to effect that purpose." (*Id.* at p. 517.)

Under the elements test, attempt to escape is not a lesser included offense of escape since it requires additional proof that the prisoner actually intended to escape. The Attorney General acknowledges that crimes for which general attempt provisions apply (e.g., sections 21a and 664), require that a defendant act with a specific intent to commit the attempted crime. (*People v. Toledo* (2001) 26 Cal.4th 221, 230.) However, the Attorney General argues that because section 4530 codifies the offense of attempt to escape in a different provision, section 21a is inapplicable. Analogizing to assault, the Attorney General argues that attempt to escape requires only a general intent "to willfully do an act that if continued without interruption would naturally and probably result in [an] escape . . . ." (See *People v. Williams* (2001) 26 Cal.4th 779, 784, 790.)

9

Assault is defined as "an unlawful *attempt*, coupled with a present ability, to commit a violent injury on the person of another." (§ 240, italics added.) In determining the meaning of "attempt" in section 240, we have looked to the historical " 'common law definition' " of assault. (*People v. Williams, supra*, 26 Cal.4th at p. 786.) In *Williams*, we concluded that assault " 'is not simply an adjunct of some underlying offense [like criminal attempt], but an independent crime statutorily delineated in terms of certain unlawful conduct immediately antecedent to battery.' [Citation.] Unlike criminal attempt where the ' "act constituting an attempt to commit a felony may be more remote," ' ' "[a]n assault is an act done toward the commission of a battery" ' and must ' "immediately" ' precede the battery. [Citation.]" (*People v. Williams, supra*, 26 Cal.4th at p. 786.)

We explained that criminal attempt and assault require different mental states. "Because the act constituting a criminal attempt 'need not be the last proximate or ultimate step toward commission of the substantive crime,' criminal attempt has always required 'a specific intent to commit the crime.' [Citation.] In contrast, the crime of assault has always focused on the nature of the act and not on the perpetrator's specific intent." (*People v. Williams, supra*, 26 Cal.4th at p. 786.) Thus, we noted that assault is defined in terms of the proximity of the assaultive act to the completion of the offense (i.e., battery) and does not include a specific intent to injure because the assaultive act, by its nature, subsumes such an intent to injure. (*Ibid*.)

Unlike assault, the act constituting an attempt to escape is not defined in terms of its proximity to the completed escape. The Attorney General has provided no legislative history or case law to support the argument that attempt to escape as it relates to specific intent is analogous to assault. Indeed, *Gallegos* rejected that very argument. (*Gallegos, supra*, 39 Cal.App.3d at p. 516; see *People v. Lancaster* (2007) 41 Cal.4th 50, 94 [citing *Gallegos* with approval].)

10

"The introduction into the concept of attempt to escape of a requirement of intentionally doing an act, the direct, natural and probable consequence of which, if successfully completed, would be an escape, too narrowly limits the application of the statute. Such an act could be to pass part way through a door, window or other opening to the outside of the place of confinement before falling back, being pulled back or disabled. [¶] . . . [¶] The Legislature has not proscribed the doing of any single defined act as an attempt to escape. Many acts, including some non-criminal in themselves, might be conducive toward carrying out an intention to escape, and the scope of the statute proscribing such an attempt should not be limited to specifically designated acts." (*Gallegos, supra*, 39 Cal.App.3d at pp. 516-517.) Thus, the heightened mental state required for an attempt to escape serves to "separate[] criminality itself from otherwise innocuous behavior." (*United States v. Bailey, supra*, 444 U.S. at p. 405.) Contrary to the Attorney General's request that we overrule *Gallegos*, we see no reason to depart from its holding.

This case illustrates the purpose of a specific intent requirement. If a prisoner stole a pair of wire cutters from the prison shop, would that act constitute an attempt to escape? It would be difficult to answer this question without an inquiry into what the prisoner intended to do with the cutters: did he intend to use them as a weapon to attack another inmate, or to cut through the outer perimeter fence of the prison institution? The element of specific intent to escape distinguishes the act of an attempt to escape from the same act of a violation of prison rules regarding inmate conduct.

The Attorney General further argues that attempt to escape is a necessarily included offense of escape under the accusatory pleading test because the prosecution charged both crimes of escape and attempt to escape under section 4530, subdivision (b). The information charged one count of escape. It alleged

11

that "On or about JUNE 18, 2008 the crime of ESCAPE FROM CUSTODY, in violation [of] section 4530(b) of the Penal Code, a felony, was committed by [defendant], who at the time and place last aforesaid, did willfully and unlawfully escape and attempt to escape from CORRECTIONAL TRAINING FACILITY."

Even if it can be said that the prosecution charged attempt to escape in the information, the accusatory pleading test only applies in determining whether a defendant received *notice* of the charges against him in order to have a reasonable opportunity to prepare and present his defense. (*People v. Reed*, *supra*, 38 Cal.4th at p. 1231; *People v. Lohbauer* (1981) 29 Cal.3d 364, 368-369.) "Courts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime . . . ." (*People v. Reed*, at p. 1231.) However, where " '[c]oncerns about notice are irrelevant,' " as in the rule prohibiting multiple convictions of charged offenses, the legal elements test, rather than the accusatory pleading test, is used to determine whether an offense is necessarily included within another. (*Id.* at p. 1230.)

Here, we may assume that defendant received adequate notice of an attempt to escape charge. Because concerns about notice are not at issue here, the accusatory pleading test is not applicable. Instead, we consider only the elements test to decide whether the jury, in finding defendant guilty of escape, necessarily found all of the elements of attempt to escape. In modifying a judgment under sections 1181, subdivision 6, and 1260, an appellate court "merely brings the jury's verdict in line with the evidence presented at trial." (*People v. Navarro*, *supra*, 40 Cal.4th at p. 679.) In other words, an appellate court may make a modification, " 'not by finding or changing any fact, but by applying the established law to the existing facts as found by the jury.' " (*Ibid*.)

12

Here, the case was tried solely as an escape, the trial court did not instruct on attempt to escape, and the jury was never required to make a finding of specific intent to escape, an element of attempt to escape. Because the crime of attempt to escape is not necessarily included in the offense of escape under the elements test, the jury, by finding defendant guilty of escape, did not impliedly find all the elements of the attempt offense. Thus, the Court of Appeal correctly determined it could not statutorily reduce the escape conviction to attempted escape.

Nevertheless, the Attorney General further argues that "a conviction of attempt to commit the substantive crime is deemed a lesser included offense of the charged substantive offense, by operation of section 1159 itself." Section 1159 provides, in pertinent part, that "[t]he jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, *or of an attempt to commit the offense*." (Italics added.) The disjunctive language appears to support the claim a trial court may reduce a defendant's conviction to an uncharged attempt if supported by the evidence. However, we made the qualification that under section 1159, "[a] defendant may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime." (*People v. Sloan* (2007) 42 Cal.4th 110, 116; see *People v. Reed*, *supra*, 38 Cal.4th at p. 1227; *People v. Lohbauer, supra*, 29 Cal.3d at pp. 368-369.)

In support of the claim that attempt is a lesser included offense of any completed crime, the Attorney General relies on cases that have stated generally that " ' "it is not conceivable that any crime can be committed in the absence of an attempt to commit it." ' " (*People v. Vanderbilt* (1926) 199 Cal. 461, 463-464; see also *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 609 ["attempt is a lesser included offense of any completed crime"]; *People v. Meyer* (1985) 169 Cal.App.3d 496, 506 ["every substantive criminal offense necessarily includes the

13

attempt to commit it"]; but see *People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1627, fn. 4; *People v. Strunk* (1995) 31 Cal.App.4th 265, 271 ["an attempt is a specific intent crime and does not fit within the definition of a necessarily included offense of a general intent crime"].) Moreover, the Attorney General points to cases in which we reduced a general intent offense to an attempt to commit that offense. (*People v. Martinez* (1999) 20 Cal.4th 225, 241 [kidnapping reduced to attempted kidnapping]; *People v. Kelly* (1992) 1 Cal.4th 495, 528 [rape reduced to attempted rape].)

However, "[t]he law of 'attempt' is complex and fraught with intricacies and doctrinal divergences." (*Moorman v. Thalacker* (8th Cir. 1996) 83 F.3d 970, 974.) "As simple as it is to state the terminology for the law of attempt, it is not always clear in practice how to apply it." (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 8.) Thus, "[w]e must not generalize in the law of attempt." (*United States v. Berrigan* (3d Cir. 1973) 482 F.2d 171, 187.) Although the above cases relied on by the Attorney General have stated or applied the general principle that attempt is a lesser included offense of any completed crime, it is not applicable here, where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense.

The Attorney General contends that any error in the trial court's failure to instruct on attempt to escape was invited. The Attorney General argues defendant is barred from challenging the court's failure to instruct because he expressly objected to an attempt instruction as a conscious tactical choice and induced the court not to give an attempt instruction. (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1234.)

The Attorney General's invited error argument lacks merit for two reasons. First, the trial court did not have a sua sponte duty to instruct on attempt to escape because it is not a lesser included offense of escape. (See *People v. Gutierrez*

14

(2009) 45 Cal.4th 789, 826 [trial court has sua sponte duty to instruct jury on any lesser offense that is both included in the offense charged and is supported by the evidence].)  Second, defendant does not raise instructional error.  "The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest.  If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal."  (*People v. Wickersham* (1982) 32 Cal.3d 307, 330.)  Here, the issue is not whether defendant may challenge the omission of the instruction because it was invited error, but rather whether the Court of Appeal had the authority to reduce the escape conviction to an attempt when the jury was not instructed on an element of attempt to escape, and thus the jury never found that element.  Accordingly, the Attorney General's invited error assertion is misplaced.

The Attorney General further argues that the absence of an instruction and of a specific intent finding on attempt to escape does not bar modification because the evidence was overwhelming.  When apprehended, defendant confessed to planning an escape and wore a prison jacket with the yellow letters "CDC" blacked out.  He wrote letters to his children admitting to the escape plan.  Additionally, defendant arranged his bed to make it appear he was still in it.  Although the prosecution's evidence of escape (including the intent to escape) was substantial, the evidence of intent was conflicting; defendant testified that he left his cell to go to the maintenance area to assault another prisoner and did not intend to escape.  During closing argument, the prosecutor argued that defendant's undisputed acts of sawing through the bars of his cell window, removing the window pane, climbing out of the cell window, scaling a wall, and cutting through fences constituted a completed escape.  She concluded that "[e]ven if you believe that [defendant] only left his cell so he could go stab somebody, it was still an escape under the law."

15

In finding defendant guilty of escape, the jury only had to conclude that defendant was a prisoner who had been convicted of a felony, that he was confined in a prison, and that he "escaped from prison" with wrongful intent. Thus, despite the conflicting evidence on defendant's intent to escape, the jury was not required to decide the credibility of defendant's testimony. In returning a verdict on the escape charge, it did not have to make a specific intent determination, and defendant's testimony was irrelevant as to the jury's "wrongful intent" finding. But even if the jury believed defendant's testimony that he merely intended to assault another prisoner and did not intend to escape, the jury could have reasonably believed under the instructions given, that defendant's acts of passing through the barrier of the cell bars and interior fences qualified as a completed escape.

Thus, the record contains evidence that could lead a rational jury to find the element of specific intent lacking and such a finding would be consistent with the jury's verdict. The Court of Appeal correctly determined it could not modify the escape conviction to an attempt to escape. (Cf. *People v. Mil* (2012) 53 Cal.4th 400, 417; see also *Neder v. United States* (1999) 527 U.S. 1, 19 ["where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding," the reviewing court "should not find the error harmless."].)

16

## III.  DISPOSITION

We affirm the judgment of the Court of Appeal.


**CHIN, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C.J.**
**KENNARD, J.**
**BAXTER, J.**
**CORRIGAN, J.**
**LIU, J.**

**CONCURRING OPINION BY WERDEGAR, J.**


I concur in the majority's holding that the Court of Appeal, having reversed defendant's conviction of escape (Pen. Code, § 4530) for insufficient evidence of a completed escape, could not reduce the conviction to attempted escape. The majority properly declines to address sufficiency of the evidence of escape, as the People have not challenged the Court of Appeal's conclusion on that issue. (Maj. opn., *ante*, at p. 6, fn. 2.) As a result, the majority has no occasion to address the underlying error that led to defendant's escape conviction in the first place: the giving of a misleading standard instruction defining escape. I write separately on this point in the hope of forestalling similar errors in future cases.

CALCRIM No. 2760, the Judicial Council-approved instruction on escape and attempted escape, states in part: "*Escape* means the unlawful departure of a prisoner from the physical limits of his or her custody. [It is not necessary for the prisoner to have left the outer limits of the institution's property. However, the prisoner must pass beyond some barrier, such as a fence or a wall, intended to keep the prisoner within a designated area.]"

The trial court gave this part of CALCRIM No. 2760, including the bracketed portion. (Maj. opn., *ante*, at p. 4.) Quoting the instruction, the prosecutor then argued to the jury that defendant committed a completed escape simply by sawing through the bars of his cell window, leaving his cell, and going through other fences, even though defendant—who was apprehended in a storage

1

area of the Correctional Training Facility, where he was confined—admittedly had not left the confinement of the prison itself, had not, in the prosecutor's words, gotten "outside that last fence."[1]  Later in her argument, the prosecutor reiterated that because defendant had "sawed through the bars of his cell and . . . left his cell," and had gone through "fences that were supposed to keep him where he belongs within the prison," defendant had escaped.  Indeed, "When he left his cell, the escape was committed."

The prosecutor's argument reflected the wording of CALCRIM No. 2760, which in the last sentence of the quoted passage above implies that a prisoner escapes merely by crossing a wall or fence "intended to keep the prisoner within a designated area."  This, however, is not the law.

As authority for the bracketed sentences of the instruction, which the CALCRIM drafters advise are to be given "if there is an issue as to whether the defendant went far enough to constitute an escape," the bench notes for CALCRIM No. 2760 cite *People v. Lavaie* (1999) 70 Cal.App.4th 456, 459-461 (*Lavaie*).  (Judicial Council of Cal., Crim. Jury Instns. (2012) Bench Notes to CALCRIM No. 2760, p. 692.)  But the instruction's implication—that leaving one secure area for another within a prison or jail constitutes an escape even if the prisoner remains within the facility's secure perimeter—actually contradicts *Lavaie*'s holding.  *Lavaie* held the evidence of escape *insufficient* where the defendant had been apprehended in an area of the correctional camp he had no permission to enter but was still within the camp's perimeter fence.  (*Lavaie*, at pp. 458, 461-462.)  The *Lavaie* court noted that on review of the case law it "found no

---

[1]     The prosecutor cautioned the jury that even though this might not seem like an escape as the term is commonly used, "[y]ou are bound by the law that the judge tells you is the law."

cases recognizing an escape when a prisoner remains within the camp or prison barriers, but is outside the particular area within the camp or prison where he is permitted to be." (*Id.* at p. 461.)

In three older decisions considered and distinguished by the *Lavaie* court and the appellate court in the present case, which followed *Lavaie*, Court of Appeal panels held the evidence showed a completed escape even though the defendant had not reached the limits of the correctional facility's *property or grounds* when apprehended. (See *People v. Temple* (1962) 203 Cal.App.2d 654, 656, 658-659; *People v. Sharp* (1959) 174 Cal.App.2d 520, 522-523; *People v. Quijada* (1921) 53 Cal.App. 39, 41.)[2] These holdings support the second, seemingly correct, sentence of CALCRIM No. 2760's escape definition: "It is not necessary for the prisoner to have left the outer limits of the institution's property."

In all these cases, however, the defendant had breached a wall or fence marking the security perimeter of the correctional facility. (See *People v. Temple*, *supra*, 203 Cal.App.2d at pp. 655-656 [defendant climbed over "the security fence" and was apprehended in a field before reaching the "northern boundary of the prison property"]; *People v. Sharp*, *supra*, 174 Cal.App.2d at p. 522 [defendant scaled a fence that "marked the outer limits of the security area"]; *People v. Quijada*, *supra*, 53 Cal.App. at p. 40 [defendant and accomplices drove locomotive through prison's gate, "across the track and beyond the wall of the prison"].) None of these decisions, and none other I have found construing Penal Code section 4530, stands for the proposition that a prisoner commits a completed

---

[2]    A reference in one decision to the defendant having left "the area where he was confined" (*People v. Temple*, *supra*, 203 Cal.App.2d at p. 658) may have been the genesis of the last sentence of the quoted CALCRIM definition.

3

escape merely by breaching the bars of his or her cell or another such internal barrier.  Such unauthorized internal movement may constitute an *attempt* to escape, assuming the prisoner harbors the specific intent to escape (maj. opn., *ante*, at p. 9), and may also violate prison rules (*Lavaie*, *supra,* 70 Cal.App.4th at p. 462), but by itself it is insufficient to show a completed escape.

The majority's holding on attempt to escape would appear to call for a modified instruction defining the specific intent to escape as including an intent to avoid further confinement.  (Maj. opn., *ante*, at p. 9.)  At the same time, consideration should be given to revising the definition of escape in CALCRIM No. 2760 so that it no longer erroneously implies an inmate commits an escape merely by breaching a barrier enclosing "a designated area" of a prison or jail.

**WERDEGAR, J.**

4

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Bailey

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 187 Cal.App.4th 1142
**Rehearing Granted**

_____

**Opinion No.** S187020
**Date Filed:** July 12, 2012

_____

**Court:** Superior
**County:** Monterey
**Judge:** Tim S. Buckley*

_____

**Counsel:**

Jonathan E. Berger, under appointment by the Supreme Court, and William M. Robinson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin, Gregg E. Zywicke and Sara Turner, Deputy Attorneys General, for Plaintiff and Respondent.

*Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jonathan E. Berger
1415 Fulton Road, #205-170
Santa Rosa, CA  95403
(707) 206-6649

Sara Turner
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5712