Filed 10/28/14  P. v. Mesbahi CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>NEMA SHAYAN MESBAHI,<br><br>   Defendant and Appellant. | H038946<br>(Santa Clara County<br>Super. Ct. No. CC950879) |

Defendant appeals against a judgment arising out of sex crimes he committed against a girl.  We will modify the judgment with regard to certain fines and, as thus modified, affirm it.

### PROCEDURAL BACKGROUND

An information charged defendant Nema Shayan Mesbahi with sex crimes that he was alleged to have committed against Marina Doe on or about June 22, 2009.  The charges consisted of forcible rape (Pen. Code, § 261, subd. (a)(2)),[1] rape committed when the victim was intoxicated and could not resist (§ 261, subd. (a)(3)), and sexual penetration committed under the same circumstances (§ 289, subd. (e)).  The information

---

[1] All statutory references are to the Penal Code.

alleged that defendant had a prior conviction under the "Three Strikes" law (§§ 667, subds. (b)-(i)), 1170.12), for armed robbery.

Defendant was tried to a jury, which found him guilty of sexually penetrating and raping the victim while she was intoxicated. (The testimony was that defendant used a finger to accomplish the sexual penetration.) It acquitted him of the forcible-rape charge, which had been presented as an alternative to the intoxication-rape charge. The parties do not tell us how the strike prior allegation was found true, but defendant acknowledges that defendant's sentence was doubled under the Three Strikes law and does not contest that decision.

The trial court sentenced defendant to a six-year term for the rape and a concurrent six-year term for the sexual penetration. This included a doubling of the term pursuant to the Three Strikes law. The court also imposed restitution fund and parole revocation fines of $2,880 each. It awarded total presentence credits of 1401 days.

FACTS

A group that included defendant took 15-year-old Marina Doe to a secluded location, where defendant and another man persuaded her to intoxicate herself by imbibing an alcoholic beverage. According to defendant, Marina kissed him and told him she wanted to be his "birthday present," an offer he declined. Marina told a different story to the police, a nurse who conducted a Sexual Assault Response Team (SART) examination, and the jury: after defendant got her drunk, he raped her and used a finger to penetrate her vagina against her will. Forensic evidence supported her version of events. We will present additional details below.

DISCUSSION

### I. Admitting Rebuttal Evidence of Second SART Examination

Defendant claims the trial court erred under state law by allowing the prosecution to introduce rebuttal evidence offered to counter evidence adduced by the defense,

including the testimony of the defense's medical-expert witness and testimony from the SART nurse on cross-examination.

We find no error.

The SART nurse, a prosecution witness, testified that the SART examination showed injuries, in the form of two reddened areas and one abrasion, in the victim's pubic area. "If I see redness, I know it's happened within a day or so. If I see an abrasion, it could be up to 72 hours," she said. The injuries were subtle and "should go away within a few days for a healthy, young 15-year-old." Cross-examining the nurse, defense counsel asked, "wouldn't a follow-up examination in this case determine whether or not the redness was still present or if the redness had disappeared from the areas [where] you say there is redness?" Defense counsel was wondering why no follow-up examination had been done, given the nurse's testimony on direct examination. "[F]ollow-up examinations are not mandatory," the nurse replied.

A defense expert witness, a medical doctor with expertise in forensic sexual assault analysis, testified that he did not see anything in the SART photographs that looked like injuries. Rather, the redness was the victim's natural skin color, especially in this case, in which "I don't think that this part of the body looks particularly red." As for the abrasion, if caused by injury it should have disappeared after 72 hours.

As part of this line of inquiry, defendant's medical expert opined that follow-up examinations were commonly done when injury is suspected and are often done to learn whether any redness in victims is "simply the way they look" or is instead, for example, the consequence of an infectious condition.

Faced with this testimony, the prosecution decided a second examination was in order and had one done immediately. It produced no sign of abrasion or redness, and so in rebuttal, and over a defense objection, a prosecution witness, also a doctor, testified

3

that the abrasion and redness were not natural features of the victim's skin and that the SART nurse who had testified earlier "was correct in calling these injuries."[2]

We review defendant's claim for abuse of discretion. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1088.)[3]

Under section 1093, subdivision (d), after the two cases-in-chief, "[t]he parties may then respectively offer rebutting testimony . . . ."

"Prosecution rebuttal evidence must tend to disprove a fact of consequence on which the defendant has introduced evidence." (*People v. Wallace*, *supra*, 44 Cal.4th at p. 1088.) More broadly, "It is restricted to evidence made necessary by the defendant's case in the sense that he has introduced new evidence or made assertions that were not implicit in his denial of guilt." (*People v. Carter* (1957) 48 Cal.2d 737, 753-754.)

The trial court did not abuse its discretion in admitting the evidence. This aspect of defendant's comprehensive and multifaceted approach to his case—that the redness and abrasion could be natural phenomena, not ones caused by injury—was not implicit in his not guilty plea and entitled the prosecution to counter it with rebuttal evidence. (See

---

[2] The trial court would later explain that it anticipated the prosecution would take this step in light of the defense expert witness's testimony. "[I]n terms of surprise evidence, the minute I heard . . . the doctor say that and then I heard counsel say 'rebuttal,' I knew exactly what he was thinking. So I would have anticipated you [defense counsel] would have had the same reaction."

[3] The People challenge defendant's claim at the threshold, claiming trial counsel invited any error and the testimony was not rebuttal testimony at all, but part of the prosecution's case-in-chief. To the extent these contentions give rise to "close and difficult" (*People v. Champion* (1995) 9 Cal.4th 879, 908, fn. 6, overruled on another point in *People v. Combs* (2004) 34 Cal.4th 821, 860.) considerations, we need not address them. It is preferable to resolve claims on the merits when possible (see *People v. Uribe* (2011) 199 Cal.App.4th 836, 883), and, as will appear in our analysis of defendant's claim, our addressing its substance leaves the People no worse off.

4

*People v. Gonzales* (2011) 51 Cal.4th 894, 937.) Accordingly, the trial court's decision to admit evidence of the second SART examination was not an abuse of discretion.

## II. *Not Instructing on Attempted Sexual Penetration*

As noted, the information charged defendant with sexually penetrating Marina Doe under subdivision (e) of section 289. She testified that he used a finger to accomplish this act, and the jury convicted him of the offense. Defendant claims the trial court should have instructed the jury on its own initiative on attempted sexual penetration, which we may assume is a lesser included offense of the completed act (see *People v. Bailey* (2012) 54 Cal.4th 740, 753; see also §§ 664, 1159).

Here, too, we find no error.

Marina Doe testified unequivocally before the jury that defendant raped her and inserted a finger in her vagina after she became intoxicated. Defendant acknowledges this, but rests this claim on a police interview in which she said at times, in essence, that her recollection of events was imperfect. But she did tell the police that defendant inserted his finger in her. On cross-examination during trial, she testified that as defendant proceeded with the assault it was, as it progressed, "not like he was fingering me." But it did reach that point: as he continued the assault, "it felt like he did stick his fingers inside of me, but he wasn't trying to finger me. That's what I'm trying to say." Defendant also reminds us of the evidence of the victim's intoxication and of expert testimony that a person as intoxicated as she was would have memory and perceptual difficulties.

The initial gloss on this area of the law is familiar. " 'A criminal defendant has a constitutional right to have his or her jury determine "every material issue presented by the evidence" and this includes the right, where appropriate, to have the jury instructed on lesser included offenses.' [Citation.] . . . [Citation.] Accordingly, even in the absence of a request, the trial court has a sua sponte duty to instruct on . . . a lesser included offense

5

. . . if the evidence has raised 'a question as to whether all of the elements . . . were present and if there was evidence that would have justified a conviction of the lesser offense.' " (*People v. Friend* (2009) 47 Cal.4th 1, 51, fn. omitted.)

But that is only the beginning of the legal framework. It cannot be its end, because almost every murder involves a battery, every offense of gross vehicular manslaughter while intoxicated involves drunk driving, every drunk driving offense involves reckless driving, and so forth. In many cases—not all—if courts had to instruct on every lesser offense that fell under the umbra of the greater offense, it would invite confusion and the risk of arbitrary verdicts, against the rule that " ' "Our courts are not gambling halls but forums for the discovery of truth." ' " (*People v. Smith* (2013) 57 Cal.4th 232, 244.) The gambling-hall metaphor can be invoked in favor of the requirement of an instruction on a lesser-included offense (see *ibid.*), but the risk of an arbitrary verdict is equally an evil to be avoided. Thus, the general rule cited in cases like *People v. Friend*, *supra*, 47 Cal.4th 1, "does not mean that the trial court must instruct sua sponte on the panoply of all possible lesser included offenses. Rather, . . . ' "such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]" ' that the lesser offense, but not the greater, was committed." ' [Citation.]" (*People v. Huggins* (2006) 38 Cal.4th 175, 215.)

Here, there is no substantial evidence that only the lesser offense of attempted sexual penetration *and not the greater* was committed. Of course defendant was attempting to penetrate the victim before he managed to do so, but since every completed crime is preceded by an attempt, that is precisely why the limit on a trial court's duties to instruct, as outlined in *People v. Huggins, supra*, 38 Cal.4th 175, exists. There must be substantial evidence that only an attempt occurred. Had the victim testified, or told

6

police, that defendant attempted to penetrate her but failed, a jury could consider attempt, even if she contradicted herself by also testifying, or telling police, that he succeeded. Defendant does not identify any place in the record that might contain statements that only an attempt occurred, with no completion of the crime. The evidence that defendant fumbled around and was possibly inefficient in completing the crime does not justify an instruction on attempt. As for her intoxicated state, that goes to her overall credibility as a percipient witness and has no bearing on the claim here.

Accordingly, the trial court did not err by not instructing on attempted sexual penetration.

### III. *Fine Amounts*

Defendant contends the trial court violated constitutional ex post facto guaranties when it calculated his restitution fund and parole revocation fines (§§ 1202.4, subd. (b), 1202.45, subd. (a)) according to a formula not in effect when he committed the crimes. He reasons that the total amount should be $2,400, not the $2,880 the court assessed. The People argue that defendant forfeited his claim and that there is no ex post facto violation—the former because counsel failed to object at the time of sentencing, the latter because under the statutes in effect at the time of the crimes (Stats. 2008, ch. 468, § 1, 2 West's Cal. Session Laws 2008, pp. 2736-2737 [former § 1202.4], Stats. 2007, ch. 302, § 15, p. 3079 [former § 1202.45]) the minimum fine was $2400 but it could be as much as $10,000 if the court exercised its discretion to impose the maximum.

The record suggests, though, that the trial court intended to impose the minimum, not the maximum, and at the time of the crimes the minimum would indeed come to $2,400. In such circumstances, ex post facto considerations may well apply. (See *People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189.) As for forfeiture, if we agreed with the People, it would only lead to a habeas corpus claim of ineffective assistance of counsel. (See *id.* at pp. 1189-1990.) It may as well be resolved here.

7

In *People v. Martinez*, *supra*, 226 Cal.App.4th 1169, we ordered the judgment modified to impose the statutory minimum applicable at the time of the defendant's crimes.  (*Id*. at pp. 1190-1191.)  We will do likewise here.

### IV.  Presentence Conduct Credits

Defendant contends that his presentence conduct credit from October 1, 2011, to the day of his sentencing, October 19, 2012, should be calculated pursuant to the current version of section 4019, and that, under the current version, he is entitled to 1592 days of presentence credit instead of the 1401 days the trial court awarded.  He recognizes that section 4019 says the current version of the credit scheme "shall apply prospectively . . . for a crime committed on or after October 1, 2011" (§ 4019, subd. (h)), but contends that constitutional equal protection principles require the current version to be applied to his days of good conduct following October 1, 2011, notwithstanding that he committed the crimes in 2009.

We have rejected this claim before.  (*People v. Kennedy* (2012) 209 Cal.App.4th 385, 395-400.)  Defendant offers no persuasive reason for us to reconsider *Kennedy*.  He is not entitled to additional conduct credit under the October 2011 version of section 4019, statutorily or under equal protection principles.

## DISPOSITION

The judgment is modified to reflect the imposition of a restitution fund fine in the amount of $2,400 and a parole revocation fine in the same amount.[4]  As so modified, the judgment is affirmed.

---

[4] The parole revocation fine is suspended unless defendant's parole comes to be revoked.  (Stats. 2007, ch. 302, § 15, p. 3079.)

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

ELIA, J.

9