Filed 12/4/13  P. v. Sims CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL A. SIMS II,<br><br>Defendant and Appellant. | B242500<br><br>(Los Angeles County<br>Super. Ct. No. SA077558) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elden S. Fox, Judge.  Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Connie H. Kan, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Michael A. Sims II guilty of first degree burglary (Pen. Code, § 459[1]), two counts of forcible oral copulation (§ 288a, subd. (c)(2)(A)), and false imprisonment by violence (§ 236). The jury found true the allegation that the forcible oral copulation offenses were committed during the commission of a first degree burglary. (§ 667.61, subds. (a) & (d).) The trial court found true the allegations that defendant suffered two prior convictions within the meaning of sections 1170, subdivision (h)(3); 667, subdivisions (a)(1) and (b) through (i); and 1170.12, subdivisions (a) through (d). The trial sentenced defendant to state prison for a term of 10 years plus 150 years to life. On appeal, defendant contends that the trial court violated his right to due process when it denied his request to instruct the jury on attempted oral copulation as a lesser included offense of forcible oral copulation. We asked the parties to submit supplemental letters briefs addressing whether attempted forcible oral copulation is a lesser included offense of forcible oral copulation. We hold that attempted forcible oral copulation is a lesser included offense of forcible oral copulation, but that substantial evidence did not support an attempt instruction. Accordingly, we affirm the judgment.

## BACKGROUND

V.S. and her 10-year-old son lived in an apartment in West Hollywood. On May 6, 2011, V.S. was asleep on her living room couch. Her son, who was not feeling well, was asleep in her bed. About 12:30 a.m., V.S. woke up and turned off the television and the lights. As she was walking to her bedroom, she heard a knock. She went to her door, looked through the peephole, and saw defendant.

Defendant said, "Open the door." V.S. replied, "I don't know you. Who are you looking for?" Defendant said a name that V.S. did not know. V.S. said, "You have the wrong place, please leave." Defendant kept saying, "Open the door." At some point,

---

[1] All statutory citations are to the Penal Code unless otherwise noted.

V.S. told defendant that she would call the police if he did not leave. Defendant walked away from the door and down the stairs. V.S. closed the living room window and ran to the bedroom to close all the windows.

V.S. returned to the living room. Defendant had returned and was by the door again. Defendant told V.S. to open the door. V.S. called 911.[2] As she was on the phone with a 911 operator, V.S. saw defendant trying to open the living room window. V.S. cried and her son, who was then standing between the bedroom and the living room, screamed. As V.S. went to her son, defendant pushed the window screen into the living room and entered the apartment through the window. V.S. grabbed her son and ran to the bedroom.

V.S. closed the bedroom door and moved a nightstand against the door. She and her son also tried to move the bed, but it was too heavy. Defendant pushed on the door. V.S. tried to hold the door closed, but defendant overcame her resistance and entered the bedroom.

V.S. and her son started to back away from defendant. V.S. believed that defendant was there to rob her and said, "Take whatever you want. What do you want?" Defendant told V.S. to take off her clothes. He said he had a gun and would kill her and her son. The recording of V.S.'s 911 call reflected that defendant told V.S. to put her son in the closet. V.S.'s son went into the closet.

V.S. took off her pajama bottoms. She was still wearing a t-shirt and underwear. Defendant pushed V.S. to her knees. He took out his genitals and told V.S. to put his penis in her mouth. V.S. put defendant's penis in her mouth. She thought that if she did what defendant told her to do, the incident would end. She did not want defendant to become violent and do something to her son. She also was afraid for herself. Defendant repeatedly told V.S. to suck his penis.

V.S. asked defendant to stop and to let her son go. At some point, V.S. said to defendant, "Look, let's just go in the living room. I'll do whatever you want." V.S. was

---

[2] The telephone line between V.S. and the 911 operator remained open during the ensuing events. Parts of a recording of the 911 call were played for the jury.

trying to shield her son. While he was in the closet, V.S.'s son kept opening the door. V.S. told him to keep the door shut and to remain in the closet. During the attack, V.S. knew her son was listening and thought he might be watching.

Defendant and V.S. started to move toward the living room. When they reached the hallway between the bedroom and the living room, V.S. saw her neighbor Izabella Shnaider at the living room window. Shnaider had gone to V.S.'s window after hearing someone crying and being alerted by a neighbor that V.S.'s window had been broken and something was going on inside. Shnaider called V.S.'s name, and V.S. screamed, "Call the police." Defendant dragged V.S. back into the bedroom.

Defendant again pushed V.S. to the floor. He took off all of his clothes and repeatedly said, "Suck it. Suck it. Put it all the way in." As reflected on the 911 recording, defendant said that he would kill V.S. if she did not "suck it." V.S. "tried to do it with [her] hand" to avoid putting defendant's penis in her mouth, but he kept saying, "Put it in your mouth." Because she did not want defendant to become violent and she was still afraid for her son and her herself, she complied and put defendant's penis in her mouth for a second time.

Both times that defendant ordered V.S. to put his penis in her mouth, defendant's penis went in and out of her mouth more than one time. Defendant "push[ed] it all the way in," V.S.'s lips were "around his penis," and her "tongue also touched [his] penis." Asked if she were able to hear the act of oral copulation on the 911 recording, V.S. responded, "I heard—there were times when I heard different noises than me crying or screaming or saying things, and it sounded like the noise that I would be making if my mouth was closed, like if something was in there and it was preventing me from saying it. Those sounds I heard. And I think also some of the crying sounds are in rhythm of the act that he was doing."

Shnaider, who babysat V.S.'s son and had a key to V.S.'s apartment, entered V.S.'s apartment, and ran to V.S.'s bedroom. V.S. was on her knees. Defendant was naked and stood next to V.S., facing her. V.S. told Shnaider that her son was in the closet and asked her to take him out of the apartment. Defendant told Shnaider to leave and

4

threatened to kill her if she did not comply. Shnaider took V.S.'s son to his grandmother's apartment, which was in the same building.

After Shnaider and V.S.'s son left V.S.'s apartment, defendant continued to tell V.S. to "Put it all the way in. Suck it. Suck it." V.S. complied. She thought that the police would arrive shortly and the incident would be over. V.S.'s mother and Shnaider ran into the bedroom. V.S.'s mother had a small rake and Shnaider had a baseball bat. V.S.'s mother hit defendant with the rake. Defendant eventually released V.S., and she ran from the bedroom. Shortly thereafter, the police arrived.

The police took V.S. to the rape treatment center at UCLA in Santa Monica. Before she went to the treatment center, V.S. washed her mouth with soap. She could still smell defendant on her and the smell was making her nauseous. At the treatment center, swabs were taken of the inside of V.S.'s mouth.

In his defense, defendant called Amy Adler, a nurse practitioner at the Santa Monica rape treatment center. Adler testified that she collected swabs from defendant's penis and scrotum about 2:45 a.m. on May 6, 2011. Melodi Moody, a nurse practitioner at the UCLA Santa Monica rape treatment center collected a swab from the inside of V.S.'s cheek.

Los Angeles County Sheriff's Department Senior Criminalist Ashley Platt tested the penis and scrotum swabs for amylase, a substance that is found in high concentrations in saliva, but also in other bodily fluids. Although amylase testing generally is used to determine the presence of saliva, the test only determines if amylase is present and not saliva. The test is used to determine the presence of bodily fluids on which DNA testing might be performed. Amylase was found in the samples taken from defendant. According to Platt, the amylase likely came from saliva. Platt forwarded the swabs for DNA testing. Platt tested the sample from V.S. for semen. She did not find any semen. According to Platt, if a person washed out her mouth with soap, it would then be difficult to obtain "bodily fluids or potential DNA."

5

Los Angeles County Sheriff's Department Senior Criminalist Lori Schumann testified that the primary contributor of the DNA found on the scrotum sample probably was male. The penis sample reflected male DNA and may have reflected female DNA.

Ilene Krokaugger worked in the biology section of the Los Angeles County Sheriff's Department crime lab. She testified that there is no correlation between the concentration of amylase in a sample and the amount of DNA in the same sample. The presence of amylase in bodily fluid merely indicates that DNA might also be present in the same bodily fluid. A test of the penis and scrotum samples showed a mixture of DNA of at least three people—including defendant as an assumed contributor, V.S. as a second possible contributor, and a third possible unknown contributor. It was possible that one of the contributors was female.

## DISCUSSION

Defendant contends that the trial court violated his due process rights when it refused to instruct the jury on attempted oral copulation as a lesser included offense of forcible oral copulation. Although attempted forcible oral copulation is a lesser included offense of forcible oral copulation, substantial evidence did not support an attempt instruction. Accordingly, the trial court did not err.

### A.      Background

Defense counsel requested an instruction on attempted oral copulation as a lesser included offense of forcible oral copulation. He argued that "given the DNA results . . . showing no female DNA on [defendant's] genitalia and given the description of events, the possible reconciliation the jury might engage in is that much of this happened but just not the technical penis in the mouth completion of the charges, thereby an attempt."

The trial court asked the prosecutor if he wanted to comment "in light of the manner in which it was charged." The prosecutor stated that he believed that the evidence showed that the oral copulation had been completed. He surmised that a decision had been made to charge defendant's conduct under section 288a with an

6

allegation under section 667.61 which would carry a sentence of 25 years to life rather than under section 220, subdivision (b)**3** which would carry a life term.

The trial court ruled, "The difficulty that I have is that I am obligated to give what would be deemed to be necessary lesser included offenses, not necessary lesser related offenses, and it just appears to me because of the lack of a 220 allegation by the prosecution for whatever the tactical reasons are, that it does impose on the court and also on the prosecution the potential that the jury could come back with a charge which doesn't fall within the provisions as noted within 667.61 sub (a) based on, as counsel has indicated, some type of compromise in terms of the verdict.

"Clearly in this case the choice is either a completed act or not a completed act. The People have chosen to proceed in that way as opposed to the 220. And albeit under some circumstances, that might be incorporated as a necessary lesser included, I believe at this point in the proceedings at this stage of the case, if the court were to accomplish that, there would have to be other charges added which changes the tenor of the case.

"Counsel is certainly free to argue, and certainly if the evidence is insufficient, not only will the 228(a)'s result in not guilty verdicts if the jury does follow the court's instruction, which it expects to do, but then does not allow [defendant] to be subject to any alternative theories which could potentially be a life sentence.

"So at this stage, I understand counsel's position, but because of the issue regarding the nature of this case, the facts and circumstances and the fact that the 220 of the Penal Code was not alleged, the court is not going to give the necessary lesser or a lesser included offense as requested by counsel of the attempt. So the request is denied."

---

**3** Section 220, subdivision (b) provides, "Any person who, in the commission of a burglary of the first degree, as defined in subdivision (a) of Section 460, assaults another with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 shall be punished by imprisonment in the state prison for life with the possibility of parole."

**B.** **Attempted Forcible Oral Copulation is a Lesser Included Offense of Forcible Oral Copulation**

In his supplemental letter brief, defendant argues that attempted forcible oral copulation is not a lesser included offense of forcible oral copulation because the completed offense is a general intent crime, and the attempted offense is a specific intent crime[4] and thus the attempted offense contains an element—specific intent—not present in the completed offense. Defendant argues that even though attempted forcible oral copulation is not a lesser included offense of forcible oral copulation, the trial court was required to give the requested attempt instruction under section 1159.[5] In its supplemental letter brief, respondent argues that attempted forcible oral copulation is a lesser included offense of forcible oral copulation because the additional specific intent element necessary for an attempt conviction does not add to the elements required for a conviction of the completed offense of forcible oral copulation.

Two tests are used to determine if an "uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. [Citation.] The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater. [Citation.] In other words, "'[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.'" [Citations.] Under the accusatory pleading test, a lesser offense is included within the greater charged offense if the facts actually alleged in the accusatory pleading include all of the elements of the lesser

---

[4] "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.)

[5] We discuss defendant's section 1159 argument below in Part C.

8

offense. **[Citations.]"**[6] (*People v. Bailey* (2012) 54 Cal.4th 740, 744, 748-749, [holding that attempt to escape is not a lesser included offense of escape from state prison because attempted escape includes a specific intent element—i.e., the specific intent to escape— not present in escape].)

In *People v. Bailey, supra,* 54 Cal.4th at pages 752-753, respondent argued that attempted escape is a lesser included offense of escape from state prison. In support of its argument, respondent relied on cases holding that an attempt to commit an offense is a lesser included offense of any completed offense: *People v. Vanderbilt* (1926) 199 Cal. 461, 463-464 ["'"it is not conceivable that any crime can be committed in the absence of an attempt to commit it"'"], *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 609 ["attempt is a lesser included offense of any completed crime"], and *People v. Meyer* (1985) 169 Cal.App.3d 496, 506 ["every substantive criminal offense necessarily includes the attempt to commit it"]; and on cases in which the California Supreme Court reduced a general intent offense to an attempt to commit that offense: *People v. Martinez* (1999) 20 Cal.4th 225, 241 [reducing kidnapping to attempted kidnapping] and *People v. Kelly* (1992) 1 Cal.4th 495, 528 [reducing rape to attempted rape]. The California Supreme Court acknowledged the cases on which respondent relied,[7] and observed that "'[t]he law

---

**6** "[T]he accusatory pleading test only applies in determining whether a defendant received *notice* of the charges against him in order to have a reasonable opportunity to prepare and present his defense. [Citations.]" (*People v. Bailey, supra,* 54 Cal.4th at p. 751.) When, "'"[c]oncerns about notice are irrelevant,"'" . . . the legal elements test, rather than the accusatory pleading test, is used to determine whether an offense is necessarily included within another. [Citation.]" (*Ibid.*) Here, because defendant requested an attempt instruction, notice is not an issue. Accordingly, we consider whether attempted forcible oral copulation is a lesser included offense of forcible oral copulation under the legal elements test. (*Ibid.*)

**7** The Supreme Court also acknowledged cases holding that the specific intent element of an attempted offense may preclude it from being a lesser included offense of a completed offense, citing *People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1627, footnote 4, and *People v. Strunk* (1995) 31 Cal.App.4th 265, 271 ["an attempt is a specific intent crime and does not fit within the definition of a necessarily included offense of a general intent crime"].

9

of "attempt" is complex and fraught with intricacies and doctrinal divergences.' [Citation.] 'As simple as it is to state the terminology for the law of attempt, it is not always clear in practice how to apply it.' [Citation.] Thus, '[w]e must not generalize in the law of attempt.' [Citation.] Although the . . . cases relied on by the Attorney General have stated or applied the general principle that attempt is a lesser included offense of any completed crime, it is not applicable here, *where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense*." (*People v. Bailey, supra,* 54 Cal.4th at p. 753, italics added.) Accordingly, the Supreme Court held that because the crime of escaping from prison is "'completed when the prisoner willfully leaves the prison camp, without authorization . . . . ,'" and the crime of attempted escape includes the additional element that the prisoner actually intended to escape, attempted escape is not a lesser included offense of escaping from prison. (*Id.* at p. 749.)

Forcible oral copulation is a general intent offense. (*People v. Warner* (2006) 39 Cal.4th 548, 557; *People v. Muniz* (1989) 213 Cal.App.3d 1508, 1517.) Attempted forcible oral copulation is a specific intent offense. (*People v. Kipp* (1998) 18 Cal.4th 349, 376.) CALJIC No. 10.10—used by the trial court to instruct the jury in this case— sets forth the elements required to find a defendant guilty of forcible oral copulation: "1. A person participated in an act of oral copulation with an alleged victim; and [¶] 2. The act was accomplished against the alleged victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the alleged victim or any other person." (See *People v. Scott* (2000) 83 Cal.App.4th 784, 794, fn. 4.)

Like forcible oral copulation, forcible rape is a general intent offense. (*People v. DePriest* (2007) 42 Cal.4th 1, 48.) Like attempted forcible oral copulation, attempted forcible rape is a specific intent offense. (*Ibid.*) CALJIC No. 10.00 sets forth the elements required to find a defendant guilty of forcible rape: (1) a male and female engaged in an act of sexual intercourse; (2) they were not married at the time; (3) the act of intercourse was against the will of the victim; and (4) the act was accomplished by means of force, violence, duress, menace, or fear of immediate and unlawful bodily

10

injury to the victim or to another person. (See *People v. Maury* (2003) 30 Cal.4th 342, 426.)

The California Supreme Court treats attempted forcible rape as a lesser included offense of forcible rape. (*People v. Kelly, supra,* 1 Cal.4th at p. 528 [reducing rape to attempted rape], cited without criticism in *People v. Bailey, supra,* 54 Cal.4th at p. 753; *People v. Atkins* (2001) 25 Cal.4th 76, 88 [citing *People v. Kelly* for the proposition that "attempted rape, a specific intent crime, is a lesser included offense of rape, a general intent crime"].) For purposes of lesser included offense analysis—i.e., whether an attempted offense is a lesser included offense of a completed offense, there is no meaningful distinction between the elements of forcible rape and forcible oral copulation. That is, the specific intent required both for attempted forcible rape and for attempted forcible oral copulation is not a "particularized intent that goes beyond what is required by the completed offense" of forcible rape or forcible oral copulation. (See *People v. Bailey, supra,* 54 Cal.4th at p. 753.) According, just as attempted forcible rape is a lesser included offense of forcible rape, attempted forcible oral copulation is a lesser included offense of forcible oral copulation.

*People v. Bailey, supra,* 54 Cal.4th 740 is distinguishable. Unlike in *People v. Bailey*, where the specific intent element of attempted escape added the intent to escape from prison, an element that was not required for the completed offense of escape from prison (*id.* at p. 749), the specific intent element of attempted forcible oral copulation does not add an intent element not already present in the offense of forcible oral copulation. That is, the completed offense of forcible oral copulation requires that the defendant forced the victim to orally copulate the defendant against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the alleged victim or any other person. Attempted forcible oral copulation includes the specific intent element that the defendant specifically intended to force the victim to orally copulate the defendant against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the alleged victim or any other person.

11

**C.      Substantial Evidence Did Not Support an Instruction on Attempted Forcible Oral Copulation**

A trial court has no duty to give a requested instruction on a lesser included offense unless substantial evidence supports the instruction. (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1327.) "Substantial evidence 'is not merely "*any* evidence . . . no matter how weak" [citation], but rather "'evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]'" that the lesser offense, but not the greater, was committed. [Citations.]' (*People v. Cruz* (2008) 44 Cal.4th 636, 664 [80 Cal.Rptr.3d 126, 187 P.3d 970].) "'On appeal, we review independently the question whether the court failed to instruct on a lesser included offense." [Citation.]' (*People v. Avila* (2009) 46 Cal.4th 680, 705 [94 Cal.Rptr.3d 699, 208 P.3d 634].)" (*Id.* at pp. 1327-1328.)

The trial court instructed the jury on a violation of section 288a, subdivision (c)(2)(A)[8] by oral copulation, in relevant part as follows:

"Every person who participates in an act of oral copulation against the will of the victim by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or any other person, is guilty of the crime of unlawful oral copulation in violation of the Penal Code section 288a, subdivision (c)(2)(A). [¶] 'Oral copulation' is the act of copulating the mouth of one person with the sexual organ or anus of another person. Any contact, however slight, between the mouth of one person and the sexual organ or anus of another person constitutes oral copulation. Penetration of the mouth, sexual organ or anus in not required. Proof of ejaculation is not required."

Defendant contends that the evidence supported his request to instruct the jury on attempted oral copulation. According to defendant, the "saliva, amylase and DNA evidence" and the recorded 911 call "did not show" that the offense of oral copulation

---

**8**      Section 288a, subdivision (c)(2)(A) provides, "Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

12

had been completed.  The evidence did not support an instruction on attempted forcible oral copulation.

First, to the extent that defendant argues that V.S.'s testimony had to be corroborated by other evidence, he misstates the law.  As the jury was instructed, "It is not essential to a finding of guilt on a charge of forced oral copulation . . . that the testimony of the witness with whom forced oral copulation is alleged to have been committed be corroborated by other evidence."  (CALJIC No. 10.60; *People v. Gammage* (1992) 2 Cal.4th 693, 701.)

Second, based on the evidence, no reasonable juror could have found that defendant committed attempted forcible oral copulation but not forcible oral copulation.  Although the evidence need not have shown that defendant's penis penetrated V.S.'s mouth to support a forced oral copulation conviction, V.S. repeatedly testified that defendant forced her to put his penis in her mouth.  She testified with respect to both instances of oral copulation that defendant's penis went in and out of her mouth more than one time, defendant "push[ed] it all the way in," her lips were "around his penis," and her "tongue also touched [his] penis."  In the 911 recording, V.S. testified that she could hear noises on the recording that showed the act of oral copulation—that is, noises that reflected that her mouth was closed and something was in her mouth that prevented her from speaking.  As for the physical evidence, Schumann testified that the primary contributor of the DNA found on the scrotum sample probably was male, that the penis sample reflected male DNA, but that the penis sample also may have reflected female DNA.  Krokaugger testified that it was possible that one of the contributors to the DNA on the penis and scrotum swabs was female.  She further testified that those swabs potentially contained V.S.'s DNA.

Third, even if the trial court should have instructed on attempted forcible oral copulation, such an error was harmless under any standard of prejudice.  "The failure to instruct on a lesser included offense in a noncapital case does not require reversal 'unless an examination of the entire record establishes a reasonable probability that the error affected the outcome.'  (*People v. Breverman* [(1998)] 19 Cal.4th [142,] 165.)  'Such

13

posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' (*Id.* at p. 177.)" (*People v. Thomas* (2012) 53 Cal.4th 771, 814, fn. omitted; *People v. Rogers* (2006) 39 Cal.4th 826, 867-868 & fn. 16 [holding that the standard in *People v. Watson* (1956) 46 Cal.2d 818 generally applies, but acknowledging a potential "exception when the error deprives the defendant of the federal due process right to present a complete defense. [Citation.]".) Whether reviewed under the state standard in *People v. Watson* or the federal standard in *Chapman v. California* (1967) 386 U.S. 18, 24, no reasonable juror could have considered the evidence set forth above and found that the act of forcible oral copulation was not completed.

Defendant's claim that section 1159 required the trial court to instruct the jury on attempted forcible oral copulation also fails. Section 1159 provides, "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." Section 1159 does not expand the circumstances under which lesser included offense instructions are appropriate. Instead, it is simply the statutory authorization that permits "[a] defendant [to] be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.)

14

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                              MOSK, J.


I concur:


        TURNER, P. J.

KRIEGLER, J., Concurring.


I concur in the judgment but see no need to settle the parties' dispute over whether attempted forcible oral copulation is a necessarily included offense of forcible oral copulation. The record contains no substantial evidence defendant committed an offense other than the completed crime of forcible oral copulation. Defendant's contention that the trial court erred by denying his request for instructions on attempted forcible oral copulation as a lesser included offense is therefore without merit. A trial court need only instruct on a lesser included offense "when the evidence raises a question as to whether all of the elements of the charged offense were present (see, e.g., *People v. Hood* (1969) 1 Cal.3d 444), but not when there is no evidence that the offense was less than that charged. (*People v. Noah* (1971) 5 Cal.3d 469, 479; *People v. Osuna* (1969) 70 Cal.2d 759, 767.)" (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155; *People v. Smith* (2013) 57 Cal.4th 232, 245.) Attempting to unravel the application, if any, of *People v. Bailey* (2012) 54 Cal.4th 740 to the issue presented here is not jurisprudentially necessary to resolve this appeal.


KRIEGLER, J.